# Court of Appeals.

December 11, 1894.

## PEOPLE v. CHARLES W. GARDNER.

(63 St. Rep. 21; 144 N. Y. 119, modifying and affirming 9 N. Y. Cr. 124.)

1. EXTORTION—ATTEMPT TO COMMIT.
    Where a threat is made with intent to commit the crime of extortion, and tends, but fails, to effect its commission, it is plainly, within the statute, an attempt to commit the crime.

2. SAME.
    Such crime depends upon the mind and intent of the wrongdoer, and not on the effect or result upon the person sought to be coerced.

3. SAME
    The accused cannot protect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his

criminal attempt, it could not be fully carried into effect in the particular instance.

**4. TRIAL—IDENTIFICATION—CRIMINAL CASES.**

It is not error, in a crminal case, for the court to compel the defendant to stand up for identification.

**5. EVIDENCE—EXTORTION.**

On the trial of an indictment for an attempt to commit the crime of extortion, the defendant may, in order to show the reason for his intimacy, and rides with and visits to and with the prosecutrix, which were established by the prosecution, prove that he acted, in so doing, under the general instructions of the Society for the Prevention of Crime, whose agent he was, and that he reported his acts to its officers and followed their directions.

Appeal from judgment of the general term of the supreme court in the first judicial department, entered upon an order, which reversed a judgment of the court of general sessions of the peace in and for the city and county of New York, entered upon a verdict convicting defendant of an attempt to commit the crime of extortion.

Henry B. B. Stapler, for appellant.

John W. Goff, for respondent.

EARL, J.—The defendant was indicted and upon his trial convicted of an attempt to commit the crime of extortion in the city of New York on the 4th day of December, 1892, by attempting to obtain $150 from Catharine Amos by threatening to accuse her of keeping a house of prostitution. The following are the sections of the Penal Code under which he was convicted: Sec. 552. "Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right;" § 553, "Fear, such as will constitute extortion, may be induced by a threat" (among other things) "to accuse a person of any crime;" § 34, "An act done with intent to commit a crime, and tending, but failing, to effect its commission, is an attempt to commit that crime;" § 685, "A person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court, in its discretion, discharges the jury and directs the defendant to be tried for the crime itself."

Catharine Amos, who was the principal witness for the Peo-

ple, testified that for nine years she had been the keeper of a house of prostitution in the city of New York, and that the defendant, in December, 1892, came to her and agreed with her that if she would pay certain sums of money to him, and especially the sum of $150, he would not accuse her of the crime, and that from October 19, 1892, to December 4, 1892, she had been acting as a decoy of the police and trying to induce the defendant to receive money from her under such circumstances as would render him guilty of a crime and enable the police to arrest and convict him of it.

The evidence tended to show the existence of every element constituting the crime of extortion except that Mrs. Amos, in paying the money exacted by the defendant, was not actuated by fear.

It is urged on behalf of the defendant that the fact that his threats did not inspire fear inducing any action on the part of Mrs. Amos, an element essential to constitute the completed crime of extortion, renders it impossible to sustain an indictment and conviction for the lesser crime of an attempt at extortion, and so a majority of the judges constituting the general term held. We are of opinion that those learned judges fell into error.

The threat of the defendant was plainly an act done with nitent to commit the crime of extortion, and it tended, but failed, to effect its commission, and, therefore, the act was plainly within the statute an attempt to commit the crime. The condition of Mrs. Amos' mind was unknown to the defendant. If it had been such as he supposed, the crime could have been and probably would have been consummated. His guilt was just as great as if he had actually succeeded in his purpose. His wicked motive was the same, and he had brought himself fully and precisely within the letter and policy of the law. This crime, as defined in the statute, depends upon the mind and intent of the wrongdoer, and not on the effect or result upon the person sought to be coerced. As said in People v. Moran, 123 N. Y. 254; 33 St. Rep. 397, where the defendant was convicted of an attempt to commit the crime of larceny by thrusting his hand into the pocket of a woman which was not shown to contain anything, "the question whether an attempt to commit a

crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the consummation of his design. * * * An attempt is made when an opportunity occurs and the intending perpetrator had some act tending to accomplish his purpose, although he is baffled by an unexpected obstacle or condition." In Commonwealth v. Jacobs, 9 Allen, 274, the defendant was convicted of soliciting a person to leave the commonwealth for the purpose of enlisting in military service elsewhere, although such person was not fit to become a soldier, and there it was said: "Whenever the law makes one step towards the accomplishment of an unlawful object, with the intent or purpose of accomplishing it, criminal, person taking that step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance. It is now the established law, both in England and in this country, that the crime of attempting to commit larceny may be committed, although there was no property to steal, and thus the full crime of larceny could not have been committed. Reg. v. Brown, 24 Q. B. Div., L. R. 357; Reg. v. Ring, 66 Law Times R. 300; Commonwealth v. McDonald, 5 Cush. 365; People v. Jones, 46 Mich. 441; State v. Wilson, 30 Conn. 500; Clark v. State, 86 Tenn. 511; State v. Beal, 37 Ohio St. 108; Rogers v. Commonwealth, 5 S. & R. 463; Hamilton v. State, 36 Ind. 280. In Rex v. Holden, Russ. & Ry. 154, it was held on an indictment under a statute against passing or disposing of forged bank notes, with intent to defraud, that it was no defense that those to whom the notes were passed knew them to be forged, and, therefore, could not be defrauded. In Reg. v. Goodchild, 2 Carr. & Kir. 293, and Reg. v. Goodall, 2 Cox Cr. C. 41, it was held under a statute making it a felony to administer poison or use any instrument with intent to procure the miscarriage of any woman, that the crime could be committed in a case where the woman was not pregnant. It has been held in several cases that there may be a conviction of an attempt to obtain property by false pretenses, although the person from whom the attempt was made knew at the time that

the pretenses were false, and could not, therefore, be deceived. Regina v. Hensler, 11 Cox. Cr. Cas. 570; Reg. v. Banks, 12 id. 393; Reg. v. Francis, id. 613; Reg. v. Rainford, 13 id. 9; Reg. v. Jarman, 14 id. 112; Reg. v. Eagleton, Dearsly's Cr. Cas. 515; Reg. v. Roebuck, id. 24; Reg. v. Ball, 1 Carrington & Marshman, 249; People v. Stiles, 75 Cal. 570; Hamilton v. State, 36 Ind. 280; People v. Bush, 4 Hill, 133; People v. Lawton, 56 Barb. 126; McDermott v. People, 5 Park. Cr. Cas. 104; Mackesey v. People, 6 id. 114. And to the same effect are the text books on criminal law. 1 Bishop on Criminal Law, § 723, et seq. So far as I can discover there is absolutely no authority upholding the contention of the learned counsel for the defendant, that because the defendant did not inspire fear in the mind of Mrs. Amos by his threats, and thus could not have been guilty of the completed crime of extortion, therefore, he cannot be convicted of attempting to commit the crime. That contention is, as I believe, also without any foundation in principle or reason.

Therefore, upon the facts alleged in the indictment and appearing upon the trial, the defendant could be convicted of an attempt to commit the crime of extortion, and the general term, in reversing the judgment, should not, therefore, have refused to grant a new trial and have discharged the defendant.

Our attention has been called on behalf of the defendant to many other exceptions taken by his counsel during the progress of the trial which, it is claimed, point out errors. We have examined all of them, but do not deem it important to call particular attention to but two.

Upon the trial it was proved that defendant and Mrs. Amos were together upon certain occasions having a material bearing upon the case, and a witness was called to identify the defendant as the person who was in her company at one of the times and places referred to. The witness was asked: "Do you know Mr. Gardner?" Answer: "I do not." Question: "Would you know him if you saw him?" Answer: "Yes, sir." Then the court directed the defendant to stand up. The defendant's counsel objected to his standing up, or that he should be compelled to stand up, or to testify against himself. The court replied: "The prisoner will rise; stand him up." And then, against the objection of his counsel, the defendant was forcibly

compelled to stand up, and then he was identified by the witness. It is now claimed on his behalf that this action on the part of the court violated his constitutional rights by compelling him to be a witness against himself. N. Y. Constitution, art. 1, § 6; U. S. Constitution, amendment 5. We do not think that the defendant's constitutional right was violated, or that he was compelled, within the meaning of the constitutional provisions referred to, to give evidence against himself. He was bound to be in court and in the presence of the jury, the recorder and the witnesses who might be there. The recorder, the jurors and the witnesses had the right to see him, and he had the right to see them. It was necessary that he should be identified as the person named in the indictment and charged with the crime. His mere standing up did not identify him with the alleged crime, and did not disclose any act connected with the crime. There was nothing on his person or in his appearance that in any way connected him with the crime, or furnished any evidence whatever of his guilt. Suppose he had come into court with his face veiled, could not the recorder compel him to remove the veil that his face might be seen? Could he not compel him to remove his hat; to stand or sit in the prisoner's dock? In the examination of the witness could not the district attorney have pointed to the defendant and asked the witness whether he was the person he had seen with Mrs. Amos? Instead of compelling the defendant to stand up, could not the recorder have directed the witness to go to the place where he was and look at him with the view of identifying him? If all these things could be done without violating the rights of the prisoner, how is it possible to say that he was harmed, or that his constitutional right was invaded by compelling him to stand up for the purpose of identification? For the orderly conduct of a criminal court it is requisite that the trial judge should have the power to say what place the prisoner shall ocupy in the court room, and whether at any time he shall stand or sit, and be covered or uncovered; and he must have the power at all times to keep the prisoner within sight of the court, the jury, the counsel and the witnesses. The history of the constitutional provision referred to clearly de-

monstrates that it was not intended to reach a case like this.
Story's Com. Lim., § 1788; 1 Steph. Hist. Crim. L. 440. The
main purpose of the provsiion was to prohibit the compulsory
oral examination of prisoners before trial, or upon trial, for the
purpose of extorting unwilling confessions or declarations impli-
cating them in crime.   It could reach further only in exceptional
and peculiar cases comnig within the spirit and purpose of the
inhibition.   A murderer may be forcibly taken before his dying
victim for identification, and the dying declaration of his vic-
tim may then be proved upon his trial for his identification.  A
thief may be forcibly examnied and the stolen property may be
taken from his person and brought into court for his condemna-
tion.   A prisoner's person may be examined for marks and
bruises, and then they may be proved upon his trial to establish
his guilto and it would be stretching the constitutional inhibi-
tion too far to make it cover such cases and cases like this, and
the inhibition thus applied would greatly embarrass the admin-
istration of justice.   In Rice v. Rice, 47 N. J. Eq. R. 559, Beasley,
C. J., said: "That every court of judicature, as an indispensa-
ble attribute, is possessed of the power to require every person
who is present as a party, or who is a witness under examina-
tion, to disclose his or her face to the court or to the jury, if there
be one, would not seem in any degree questionable.   Without
such exposure there would be no certainty who the prisoner
really was who assumed to act as party or witness.    Tó order
such persons to expose their faces to view is common usage in
every court, and thus far the practice seems not to be open to
any question."   Our attention is called to authorities bearing
more or less upon the question we are now considering, and we
find that they are not all harmonious.   In State v. Jacobs, 5
Jones (N. C.), 259, it was held that a judge has no right to compel
a defendant in a criminal prosecution to exhibit himself to the
inspection of the jury for the purpose of enabling them to deter-
mine his status as a free negro.   There the defendant was
indicted as a free negro for carrying arms, and it became neces-
sary for the prosecution to show that he was a negro, and in that
state a man was held to be a negro who had as much as one-
sixteenth part of African blood in his veins.   There the defend-
ant was compelled to stand up that the jury might see whether

he was a negro or not, and to determine that fact from their own observation. Thus there was a sense in which it could be said that the defendant was compelled to furnish evidence against himself upon a vital issue to be tried, and so that case is distinguishable from this. But no authority was cited to uphold that decision, and we entertain no doubt that it was erroneous. The judge writing the opinion said: "Admitting that the state has a right to compel his presence at the trial, it does not follow that he is bound to stand or sit within view of the jury." Can this observation be correct? Certainly in this state it cannot be maintained that a prisoner, when on trial, could not be compelled to stand or sit in view of the jury. It is the right of the prisoner to be in the presence and view of the jury, and it is the right of the prosecution to have him in the view of the presiding judge and jury and the counsel engaged in the trial. And whether at any particular time he shall stand up or sit down in the presence of the jury must be a matter resting in the discretion of the trial judge, and in no sense can it be said that by the exercise of such discretion his constitutional right is involved.

In the case of the State v. Johnson, 67 N. C. R. 55, the defendant was on trial for rape, and on the trial the prosecutrix was asked by the prosecuting attorney to look around the court room and see if she could identify the guilty party, and she pointed to the prisoner and said, "That is the black rascal." It was insisted that this was to make the prisoner furnish evidence against himself; that he had the right to be there and confront his accusers, and that for the state to take advantage of his presence to have him pointed out and identified placed him in the dilemma of either abandoning his constitutional right to be present or of affording the means of conviction by its exercise. The court held against this contention, and that no error was committed. Suppose in that case the court had placed the prisoner where he would have been conspicuously in view of the court, the jury and the witnesses, and the prosecutrix had then identified him, would his constitutional right have been invaded? And if he had been compelled to stand up would he have been compelled within the meaning of the Constitution, to give evidence against himself? We think not. We are, therefore, of opinion that no error was committed in the

case in compelling the defendant to stand up for identification.

It appeared upon the trial by the witnesses for the prosecution, that prior to the time of the alleged offense the defendant was much in the company of Mrs. Amos; that he visited her at her house; that she visited him at his house; that he frequently rode with her through the streets of New York, and visited saloons and drank wine with her. These facts were proved on the part of the prosecution to show his relations with Mrs. Amos and his motives, and as links in the chain showing the commission of the alleged crime. The defendant offered to show by himself and other witnesses that in his relations with Mrs. Amos he was acting under the directions of officers of the society for the prevention of crime, for the purpose of gaining her confidence and good will, and securing from her an affidavit which could be used for the arrest of a former agent of that society who was supposed to be engaged in extorting money from keepers of houses of prostitution by threats of prosecution, and the recorder excluded the evidence. It is now claimed that in such exclusion error was committed.

We think the evidence should have been received. The defendant should have been permitted to prove that he acted under the general instructions of the society for the prevention of crime whose agent he was, and that he reported his acts to its officers and followed their directions. Such proof would have had a tendency to put an innocent aspect upon his acts which would otherwise seem to be a part of the scheme to commit the crime with which he was charged. It is claimed on behalf of the People that the exclusion of this evidence was not harmful to the defendant as the facts were nevertheless proved. We have carefully read all the evidence, and we are not satisfied that the defendant did not suffer harm from the rulings complained of. The recorder had laid down the law by these rulings, and the defendant did not have the benefit of the evidence offered in the submission of the case to the jury. The case went to the jury with the rulings of the recorder during the progress of the trial that that kind of evidence was incompetent and illegal.

Other things transpired during the progress of the trial to

which our attention has been called, which, though not presenting legal errors which would call for a reversal of the judgment of conviction, were yet of such a character that they may have been harmful and probably were harmful to the defendant. We will not comment upon them, as they may not, and probably will not, appear upon another trial.

On account of the error above pointed out, while the general term should have reversed the judgment below, it should also have granted a new trial.

Our conclusion, therefore, is that the order of the general term should be so modified as simply to reverse the judgment of conviction and to grant a new trial.

All concur.

Ordered accordingly.