(142 App. Div. 402.)

### PEOPLE v. MOORE.

(Supreme Court, Appellate Division, First Department.   January 20, 1911.)

1. PROSTITUTION (§ 2*)—STATUTES—CONSTRUCTION—"KNOWINGLY."

 The offense denounced by Penal Law (Consol. Laws, c. 40) § 2460, subd. 4, punishing "every person who shall knowingly receive any money, * * * for * * * procuring and placing in the custody of another, for immoral purposes, any woman, with or without her consent," is completed where one knowingly receives money on account of procuring and placing in the custody of prosecutor two women with their consent, for immoral purposes, though prosecutor merely laid a trap for accused, and did not intend to make use of the women for immoral purposes, and did not so make use of them; the word "knowingly" being limited to the receipt of money, to the procuring, and to the immoral purposes for which the women were procured.

 [Ed. Note.—For other cases, see Prostitution, Dec. Dig. § 2.*

 For other definitions, see Words and Phrases, vol. 5, pp. 3937–3939.]

2. STATUTES (§ 241*)—PENAL STATUTES—CONSTRUCTION.

 A penal statute should be interpreted in the light of the evil aimed at, and no strained construction applied to its simple language.

 [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec. Dig. § 241.*]

3. CRIMINAL LAW (§ 657*)—TRIAL—IMPROPER CONDUCT OF PRESIDING JUDGE.

 The action of the court in directing counsel for accused to show cause why he should not be punished for contempt for his persistence in continuing a line of questioning against the ruling of the court, and in subsequently announcing that it would dispose of the question at the conclusion of the trial, was not error where the court in emphatic language directed the jury not to consider the incident.

 [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1534; Dec. Dig. § 657.*]

Appeal from Court of General Sessions, New York County.

Belle Moore was convicted of violating Penal Law (Consol. Laws, c. 40) § 2460, and she appeals.   Affirmed.

See, also, 124 N. Y. Supp. 358; 127 N. Y. Supp. 1136.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Karlin & Busch (Alexander Karlin, of counsel), for appellant.

Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel), for the People.

CLARKE, J.   The defendant was convicted upon an indictment charging her with the crime of knowingly receiving money for and on account of procuring and placing women in the custody of another person for immoral purposes.

We have carefully examined the evidence in this case and find that the verdict of the jury was abundantly supported thereby.   The only questions we deem it necessary to consider are as follows:   (1) Section 2460 of the Penal Law (Consol. Laws, c. 40), as it existed at the time of the acts complained of, is entitled "Compulsory Prostitution of Women," and provided, in subdivision 4 thereof, that:

"Every person who shall knowingly receive any money or other valuable thing for, or on account of procuring and placing in the custody of another

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

person for immoral purposes, any woman with or without her consent, is punishable by imprisonment not exceeding five years and a fine not exceeding $1,000."

It is conceded that a trap was laid for the defendant, and that although she knowingly received a sum of money on account of procuring and placing in the custody of the principal witness for the people two women, with their consent, for immoral purposes, the appellant claims, as that person did not intend to make use of them for immoral purposes and did not, as a fact, so make use of them, the crime defined by the statute was legally impossible of accomplishment, and that therefore no crime had been committed.

The contention is based upon People v. Jaffe, 185 N. Y. 497, 78 N. E. 169, 9 L. R. A. (N. S.) 263, and People v. Teal, 196 N. Y. 372, 89 N. E. 1086, 25 L. R. A. (N. S.) 120. In the Jaffe Case the defendant had been convicted of an attempt to commit the crime defined by section 550 of the Penal Code, which provides that:

"A person who buys or receives any stolen property, knowing the same to have been stolen, is guilty of criminally receiving such property."

The Court of Appeals held that as the property prior to its purchase by the defendant had lost its character as stolen property by having been retaken into the possession of the owner, the conviction was not warranted. The court said:

"The crime of which the defendant was convicted necessarily consists of three elements: First, the act; second, the intent; and, third, the knowledge of an existing condition. There was proof tending to establish two of these elements, the first and second, but none to establish the third. This was knowledge of the stolen character of the property sought to be acquired. There could be no such knowledge. The defendant could not know that the property possessed the character of stolen property when it had not in fact been acquired by theft."

In the Teal Case, the defendant had been convicted of the crime of attempted subornation of perjury. The court stated the question presented as follows:

"Can a person be convicted of attempted subornation of perjury upon evidence which would not support a conviction upon the charge of perjury, if the attempt had been successful?"

And held that under the language of the statute (section 96, Penal Code), "a person who willfully and knowingly testifies falsely in any material matter is guilty of perjury," as the facts in regard to which the defendant attempted to suborn a person to make a false affidavit were not material to the issues presented in the action by the pleadings as they were at the time the false affidavit was attempted to be procured, there could have been no conviction of perjury of the person making such affidavit, and therefore the facts did not sustain a conviction of an attempt to suborn.

In each of those cases a peculiar statute was under consideration, and the decisions are not to be extended where the reason therefor does not exist. In the Jaffe Case the court said:

"The crucial distinction in the case before us and the pickpocket cases and others involving the same principle lies, not in the possibility or impossibility

of the commission of the crime, but in the fact that in the present case the act which it was doubtless the intent of the defendant to commit would not have been a crime if it had been consummated."

And in the Teal Case, after referring to People v. Moran, 123 N. Y. 254, 25 N. E. 412, 10 L. R. A. 109, 20 Am. St. Rep. 732, and People v. Gardner, 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741, the court said:

"It is said that they are authorities for the doctrine that the question whether a person has made an attempt to commit a crime depends upon the mind and intent of the actor, and not upon the result of the attempt. That is quite true as regards the crimes of larceny and extortion which were the subject of discussion in those cases, and it may be true in many other instances, where the law looks only to the intent without reference to result; but a different rule has been established as to the crime of perjury. The statute declares that materiality of the testimony is of the essence of the crime. Without it the crime cannot be committed no matter what the intent may be."

The statute under consideration limits the word "knowingly" to the receipt of the money, to the procuring, and to the immoral purposes for which the woman was procured; in other words, to the intent and the acts and the purposes of the defendant. She knowingly received the money; and she knowingly procured the woman; and she intended to and did deliver them for immoral purposes, with their consent. So far as the defendant was concerned, her act was completed. If the crime depends upon the subsequent accomplishment of the ultimate purpose, it will be readily seen that conviction would be almost impossible and the statute a dead letter.

Take the present case: The women were procured and delivered to be taken to Seattle to be put into a house of prostitution. Supposing that the person receiving them had also had the guilty purpose, and he and the women had started on their way, and something had intervened to prevent the final accomplishment, a change of heart, a religious conversion of one or other of the parties, a railroad accident, a rescue, or any other interruption of the design and purpose, would that have affected the guilty knowledge and intent and purpose of the procuress who had done every act within her power to do, whose connection with the transaction had ceased, and make that innocent which otherwise would have been a crime? We do not so read the statute. It should be interpreted in the light of the evil aimed at, and no strained construction applied to its simple and straightforward language. We think that the evidence sustains every essential element of the crime.

2. It is claimed that the treatment accorded to counsel by the court upon the trial tended injuriously to affect the defendant. During the trial the court directed counsel to show cause before him on the following morning why he should not be punished for contempt. After hearing his explanation, the court said that he would dispose of the question at the conclusion of the trial and directed the jury in emphatic language to absolutely banish from their minds that incident:

"It is not to be the subject of thought for any of you, and still less the subject of comment, and it is not to have the slightest weight with you in

determining what verdict shall be rendered by you in the event that this case is sent to you to determine what the verdict shall be."

The incident was unfortunate; but the conduct of counsel brought it .about, and he is responsible therefor, and not the court. A careful reading of this record has impressed us with the patience and courtesy of the trial court. Very wide latitude was granted to the defendant's counsel, but against repeated warnings he persisted in propounding obnoxious and immaterial statements thinly disguised in the form of questions which had been ruled out again and again. If there was any value in his exception, he had it. His persistence in continuing a line of questioning against the ruling of the court finally reached the point where the court properly felt that its dignity and the proper conduct of the case required the action taken. We find nothing to condemn, and feel assured that the defendant took no harm by the incident.

The other matters urged upon our attention have been examined by us; but we find no reversible error upon this record.

The judgment appealed from should be affirmed. All concur.