In the Matter of the Application of LEON J. SCHMIDT, Petitioner, Appellant, against THE DISTRICT ATTORNEY OF MONROE COUNTY and the CHIEF OF POLICE OF THE CITY OF ROCHESTER, Respondents.

Fourth Department, November 16, 1938.

*H. H. Cohen,* for the appellant.

*Daniel J. O'Mara, District Attorney of Monroe County [Harry L. Rosenthal, Assistant District Attorney,* of counsel], for the respondents.

CUNNINGHAM, J. The appellant was arrested in the city of Rochester, N. Y., on a charge of operating a motor vehicle while intoxicated, in violation of the provisions of the Vehicle and Traffic Law. When he reached the police station, a physician was summoned to examine appellant to determine his condition. This examination was had at the police station in the presence of policemen. The appellant was asked to sign his name, to walk, to touch

his nose and an examination was made of his eyes. The appellant did not object to the examination. He said he thought it had to be done.

It is claimed that it would be a violation of the constitutional provision against self-incrimination to permit the doctor to testify as to his examination of the appellant.

The Constitution of this State provides that " no person shall * * * be compelled in any criminal case to be a witness against himself." (Art. 1, § 6.) This provision is intended to prevent a person from being compelled to be a witness against himself in a criminal prosecution and also from being compelled to give testimony which might tend to incriminate him when acting as a witness in any investigation. (*People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Matter of Doyle*, 257 id. 244.)

The purpose of this provision is to protect not the guilty but innocent persons accused of crime, and it should be the aim of the courts to so interpret this provision that it cannot be used as a shield by the guilty.

In *People* v. *Gardner* (144 N. Y. 119) it appeared that a prisoner, against the objection of his counsel, was, by direction of the court, forcibly compelled to stand up so that he might be identified by a witness, and it was held that this action of the court did not violate the prisoner's constitutional rights and that he was not compelled to be a witness against himself. The court (at p. 128) said: " The history of the constitutional provision referred to clearly demonstrates that it was not intended to reach a case like this. (Story's Con. Lim. § 1788; 1 Steph. Hist. Cr. L. 440.) The main purpose of the provision was to prohibit the compulsory oral examination of prisoners before trial, or upon trial, for the purpose of extorting unwilling confessions or declarations implicating them in crime. It could reach further only in exceptional and peculiar cases coming within the spirit and purpose of the inhibition. A murderer may be forcibly taken before his dying victim for identification, and the dying declarations of his victim may then be proved upon his trial for his identification. A thief may be forcibly examined and the stolen property may be taken from his person and brought into court for his condemnation. A prisoner's person may be examined for marks and bruises, and then they may be proved upon his trial to establish his guilt; and it would be stretching the constitutional inhibition too far to make it cover such cases and cases like this, and the inhibition thus applied would greatly embarrass the administration of justice."

In *People* v. *Van Wormer* (175 N. Y. 188) it appeared that, after the arrest of the defendants, their shoes were taken from them and

placed in the footmarks leading to the house of the deceased. Evidence of the fact that the shoes corresponded in all respects with the footprints was admitted. It was held that this evidence was properly received upon the authority of *People* v. *Gardner* (*supra*), and the court quoted the portion of the opinion in the *Gardner* case to the effect that a murderer may be forcibly taken before his dying victim for identification, a thief may be forcibly examined and the stolen property may be taken from his person, and a prisoner's person may be examined for marks and bruises, and then they may be proved upon his trial to establish his guilt.

In *People* v. *Strollo* (191 N. Y. 42) it appeared that the defendant was informed that he was to be detained as a witness and was taken to the detective bureau where he was searched and some letters were taken from his person. Later another examination was made which disclosed stab wounds on defendant's body. Evidence of the results of this search and examination was admitted. The court said (at p. 61) with reference thereto: " The argument that the defendant, by being subjected to physical search and examination at the hands of the police officers, was compelled to testify against himself, seems to us to be devoid of merit. It is a sufficient answer to this suggestion that the acts complained of took place before the defendant was formally accused as the slayer of Torsielli, and that there is nothing to indicate that the search was without defendant's consent or acquiescence; but even if that were not so, we should be indisposed to give our Constitution the narrow and strained construction that is here contended for. There may be cases where physical coercion may be employed to such a degree as to come within the prohibition of the constitutional provision referred to, but we do not think this is one of them."

In *People* v. *Truck* (170 N. Y. 203) the defendant was taken by the sheriff to a room outside of the jail and examined by experts employed by the People. It was claimed that this was improper as compelling him to be a witness against himself. The court said: " This practice of allowing the experts for the People and the defense to make examinations of the prisoner, as to his mental condition, is the ordinary procedure in cases where the defense of insanity is interposed."

In *People* v. *Furlong* (187 N. Y. 198), where the defense relied upon was insanity of the prisoner, it appeared that during the course of the trial a physician at the direction of the court made a physical examination of the defendant. The doctor was sworn and told the conversation he had with the defendant, and described what he found upon a physical examination. It was held that this was not in violation of the constitutional prohibition against self-incrimination.

In *People* v. *Austin* (199 N. Y. 446), where the defense of insanity was interposed, the court (at p. 452) said: " Where a physician is sent to a jail by the district attorney to make an examination, * * * the prisoner is not thereby compelled to furnish evidence against himself."

In *People* v. *Chiagles* (237 N. Y. 193) the defendant was arrested on a charge of arson and when arrested was searched and papers and other articles were found upon his person. All were returned to him except two letters which the district attorney retained upon the ground that they were material evidence against the defendant. A motion was made for an order that the letters be returned to him. It was held that it was established firmly as a rule that " the government may ' search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime ' (*Weeks* v. *U. S.*, 232 U. S. 383, 392) " (p. 195). And further: " Search of the person becomes lawful when grounds for arrest and accusation have been discovered, and the law is in the act of subjecting the body of the accused to its physical dominion " (p. 197).

In 4 Wigmore on Evidence it is said in the chapter on " Privilege Against Self-Incrimination " ([2d ed.] § 2265): " The limit of the privilege is a plain one. From the general principle it results that an inspection of the bodily features by the tribunal or by witnesses cannot violate the privilege, because it does not call upon the accused as a witness, *i. e.* upon his testimonial responsibility. That he may in such cases be required sometimes to exercise muscular action — as when he is required to take off his shoes or roll up his sleeve — is immaterial,— unless all bodily action were synonymous with testimonial utterance; for, as already observed, not ·compulsion alone is the component idea of the privilege, but testimonial compulsion. What is obtained from the accused by such action is not testimony about his body, but his body itself." And further in the same section it was stated that a medical examination of the defendant or measuring or photographing him or removing or replacing his garments or requiring him to move his body or to write or to speak words for identification of his voice was not violative of the provision against self-incrimination.

It is not claimed in the case at bar that the appellant was compelled by force or threats to submit to the examination by the physician. The claim that the examination was compulsory is based upon the fact that the appellant was under arrest and while in the police station was examined by a physician who had been called by the police and that such examination took place in the presence of the police.

While the admission in evidence of a confession of crime made by a prisoner is regulated by statute (Code Crim. Proc. § 395), still where such confession is not made voluntarily but is made under compulsion, the admission thereof in evidence would not only be in violation of the statute, but would also require the prisoner to be a witness against himself. Therefore, the cases passing upon the question of whether a confession is voluntary or not, are applicable to the constitutional question raised in the case at bar.

In *Balbo* v. *People* (80 N. Y. 484) it was held that when a confession of a prisoner to an officer is voluntarily made, evidence thereof cannot be rejected because of the fact that the officer held the prisoner in custody at the time upon an invalid process, or without any process or lawful right.

In *People* v. *Doran* (246 N. Y. 409) it was decided that delay in arraigning a prisoner or the fact that he was questioned persistently by officers in regard to his connection with the crime, did not make his confession involuntary.

In *People* v. *Elmore* (277 N. Y. 397) the defendant's arraignment was illegally delayed until thirty-six hours after arrest. This was done for the purpose of securing a confession. These facts did not require the confession to be excluded as evidence.

It follows that the testimony of the physician as to his examination of the appellant may be received in evidence without infringing upon the constitutional rights of the appellant.

The order should be affirmed, without costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Order affirmed, without costs of this appeal to either party.