The People of the State of New York, Respondent, *v.* Louis Boord, Appellant.

First Department, December 13, 1940.

*Charles S. Rosenberg* of counsel [*Harold Mortimer Brown* with him on the brief; *Charles S. Rosenberg*, attorney], for the appellant.

*Burr F. Coleman, Deputy Assistant District Attorney*, of counsel [*Thomas E. Dewey, District Attorney*], for the respondent.

Martin, P. J. The appellant is a licensed hotel runner and has been convicted of a violation of section 925-a of the Penal Law which provides that

" A person who for purpose of gain and by means of any false statement or representation regarding a hotel, boarding house,

rooming-house, or lodging house, shall divert or attempt to divert any traveler or other person to another hotel, boarding house, rooming-house or lodging house, shall be guilty of a misdemeanor.

"The making of a false statement regarding a hotel, boarding house, rooming-house or lodging house, coupled with a suggestion or recommendation to patronize another hotel, boarding house, rooming-house or lodging house shall be presumptive evidence that the act of the defendant was committed for purpose of gain."

On June 25, 1940, the People's witnesses Gross and Beckenstein, together with a friend, drove out of the New York exit of the Holland Tunnel in an automobile bearing a Pennsylvania license. They were approached by the appellant, who inquired if they wanted any directions. The witness Gross showed appellant a room assignment and receipt issued by the Mayor's Official World's Fair Housing Bureau, Inc., in the names of Mrs. Mary Sullivan and daughter of Harrisburg, Penn., covering accommodations at 134–05 Sixtieth avenue, Flushing. The witness Gross testified:

"I told him that I was looking for this address. I asked him whether — was it far away from the World's Fair and he said that it was; it was a mile and a half from the Fair and that it was near Jamaica. I told him that the people in Jersey said it was only a short distance from the Fair and he said they lied.

"* * * He said why didn't I stop in town; that he could take me to a hotel where it would be convenient to get to the Fair for a five-cent fare on the subway and that I could make it in fifteen minutes, and that I would also be in the shopping and theatre districts when at home. He asked me to allow him to drive my car. I got out and let him into the driver's seat. I asked him the name of the hotel. He stated the Hotel Royalton. I said, ' Is it expensive? ' He said, ' $2.00 a person a night.' I asked where the hotel was located. He said, ' 44 West 44th Street.' He drove me to the hotel and he left the car. He went in and I followed. He went to the desk clerk and had some conversation. When I entered, the desk clerk rang a bell and a man escorted me to a room, 521, on the fifth floor, * * *. While up in the room, the 'phone rang and there was some conversation. The man who took me there said that the rate would be $5.00 a night. I came down to the desk and the desk clerk asked me to show him this receipt, and I did. He said, due to the fact that I had paid 75 cents for the slip, that he would let me have the room for $5.00 a night. * * *"

The witness Gross was a New York policewoman who had been assigned to the duty of obtaining evidence against violators of this

section of the Penal Law. The witness Beckenstein was a police-woman. Her testimony corroborates the testimony of the witness Gross. The testimony is that no one in the car intended to go to the Flushing address.

It is argued that, since the two policewomen were not travelers and concededly neither intended to go to the Flushing address, they did not rely on the appellant's representation and could not have been diverted.

It is not necessary that there be an actual diversion. Guilt is established when it is shown that there has been an " attempt to divert." Guilt of an attempt depends upon intent and conduct without regard to the actual consequences of that conduct.

In *People* v. *Gardner* (144 N. Y. 119) it was held that the offense of attempting to commit a crime as defined in the statute depends upon the mind and intent of the wrongdoer, not on the effect or result upon the person sought to be coerced, and one cannot pro-tect himself by showing that, by reason of some fact unknown to him at the time of his criminal attempt, the crime attempted could not in the particular instance be perpetrated.

In *People* v. *Moran* (123 N. Y. 254) it appeared that the defend-ant, in a crowded market in New York city, was seen to thrust his hand into the pocket of a woman and to withdraw it therefrom empty. He was charged with an attempt to commit the crime of grand larceny, and, in disposing of the defendant's contention that the facts did not support the charge in the indictment, Chief Judge RUGER, writing for a unanimous court, said: " The claim of the defendant is that the evidence did not show that the woman had any property in her pocket, which could be the subject of larceny, and that an attempt to commit that crime could not be predicated of a condition which rendered its commission impossible. We are of the opinion that the evidence was sufficient to authorize the jury to find the accused guilty of the offense charged. It was plainly inferrible from it that an intent to commit larceny from the person existed, and that the defendant did an act tending to effect its commission, although the effort failed. The language of the statute seems to us too plain to admit of doubt, and was intended to reach cases where an intent to commit a crime and an effort to perpetrate it, although ineffectual, co-existed. Whenever the *animo furandi* exists, followed by acts apparently affording a prospect of success and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. To constitute the crime charged there must be a person from whom the property may be taken; an intent to take it against the will of the owner; and some act performed tend-

ing to accomplish it, and when these things occur, the crime has, we think, been committed whether property could, in fact, have been stolen or not. In such cases the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some cause not previously apparent to him. The question whether an attempt to commit a crime has been made, is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design. (*People* v. *Lawton*, 56 Barb. 126; *McDermott* v. *People*, 5 Park. Cr. R. 104; *Mackesey* v. *People*, 6 id. 114; Am. & Eng. Law Encyclopedia, tit. ' Attempt.') So far as the thief is concerned, the felonious design and action are then just as complete as though the crime could have been, or, in fact, had been committed, and the punishment of such offender is just as essential to the protection of the public, as of one whose designs have been successful."

In *People* v. *Moore* (142 App. Div. 402; affd., 201 N. Y. 570) the defendant was charged with the crime of knowingly receiving money for and on account of placing women in the custody of another person for immoral purposes. It was there conceded that a trap had been laid for the defendant. Although she knowingly received a sum of money on account of procuring and placing two women in the custody of the principal witness for the People, with their consent, for immoral purposes, the defendant claimed that as that person did not intend to make use of the women for immoral purposes and did not so make use of them, the crime defined by the statute was legally impossible of accomplishment and, therefore, no crime had been committed. This court found no difficulty in sustaining the conviction, and that action was upheld by the Court of Appeals.

The fact that the People's witnesses were policewomen posing as " travelers " does not destroy the effect of the appellant's act. Considering the evil sought to be corrected, the use of these witnesses for the purposes of entrapment is not inconsistent with the statute. To sustain a conviction for an attempted crime, it is not necessary that every element constituting the crime be present. (*People* v. *Gardner*, *supra*.) As pointed out in the latter case, the crime, as defined in the statute, depends upon the mind and intent of the wrongdoer and not on the effect or result upon the intended victim. In *Commonwealth* v. *Jacobs* (9 Allen, 274) it was said: " Whenever the law makes one step towards the accomplishment of an unlawful object, with the intent or purpose of accomplishing it, criminal, a person taking that step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that, by

reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance."

The record before us establishes beyond question that it was defendant's intention to divert the People's witnesses, but he failed because of unanticipated circumstances. He did everything in his power to violate the law and, as this court said in *People* v. *Moore* (*supra*), the statute " should be interpreted in the light of the evil aimed at and no strained construction applied to its simple and straightforward language."

Questions as to the meaning of defendant's statements and the purpose for which made are questions of fact and were properly decided by the trial court.

The judgment of conviction should be affirmed.

TOWNLEY, COHN and CALLAHAN, JJ., concur; UNTERMYER, J., dissents and votes to reverse and dismiss the information.

UNTERMYER, J. (dissenting). The statute under which the defendant has been convicted was enacted for the protection of travelers and applies only to misrepresentations made to travelers and other persons in analogous positions. It renders unlawful any false statement which " shall divert or attempt to divert any traveler or other person to another hotel, boarding house, rooming house or lodging house." Applying the principle of *ejusdem generis* in the construction of the statute (*Matter of Hermance*, 71 N. Y. 481; *Chegaray* v. *Mayor, etc., of New York*, 13 id. 220; *Aikin* v. *Wasson*, 24 id. 482; *Burks* v. *Bosso*, 180 id. 341), the " *other* person " referred to must be one who, though not a traveler, is seeking accommodations from which the defendant may " *divert* or attempt to *divert* " him to " *another* " hotel. The statute does not apply to false statements made to persons who are not travelers nor in search of accommodations and who cannot be diverted from any destination. If the Legislature had intended that result it would have provided that an attempt by misrepresentation to prevail upon " *any* person " not to patronize " *any* hotel " should constitute the crime. A different question then would be presented here. Under the statute, therefore, as it has been written, one of the essential elements of the completed crime is that the victim be in the position of a traveler. Indeed, the district attorney does not argue to the contrary and the prevailing opinion of this court proceeds on that assumption. I shall, therefore, do likewise.

If the statute is intended for the protection of " travelers," then neither the completed crime nor the attempt can be committed

unless the victim is within the class which the statute protects. The circumstance that the defendant believed these detectives to be travelers did not make them so nor does it supply the element which the statute prescribes as essential to the commission of the crime. If it does, then, in accordance with the prevailing opinion, we must, hereafter, hold that an attempt to commit rape in the second degree is committed even though the victim is above the statutory age if it appears that the defendant thought her to be less. In such a case, also, the defendant *intended* to commit the crime and, judged by moral laws, was as guilty as if he had *attempted* its commission, but since the consummated act would not have been a crime the " attempt " is likewise none.

In the present case the acts of the defendant, if he had succeeded in his purpose, would not have been unlawful for the persons to whom the representations were made were not " travelers " and the attempt to commit these lawful acts was not rendered criminal by the fact that the defendant may have thought that he was violating the law. An attempt to violate the statute would indeed have been committed if the detectives had in fact been travelers and the defendant had attempted, though without success, to divert them from their destination. But " if what a man contemplates doing would not be in law a crime, he could not be said in point of law to intend to commit the crime. If he thinks his act will be a crime, this is a mere mistake of his understanding where the law holds it not to be such, his real intent being to do a particular thing. If the thing is not a crime he does not intend to commit one whatever he may erroneously suppose." (1 Bishop on Criminal Law [7th ed.], § 742.)

Two illustrations of this principle will suffice. In *People* v. *Jaffe* (185 N. Y. 497) the defendant had received property from the lawful owner in the belief that it was stolen. It was held that however depraved might have been his purpose the defendant could not be convicted of an attempt to receive stolen property for the reason that the stolen character of the property was an essential element of the crime. Similarly, it has been held that although a defendant may ordinarily be convicted of an attempt to procure a miscarriage even though it appears that the woman was not pregnant (*Commonwealth* v. *Taylor*, 132 Mass. 261; *Reg.* v. *Goodall*, 2 Cox C. C. 41), where the statute only declares it to be unlawful to procure the miscarriage of a woman " then being quick with child," he cannot be convicted of an attempt to commit the crime unless the woman was pregnant at that time. (*Rex* v. *Scudder*, 1 Moody, 216; *Commonwealth* v. *Taylor*, *supra*.) Referring to the distinction between these cases, Bishop on Criminal Law (9th ed.),

in a note to section 741 says: "Obviously, this decision was required by the express statutory words." In my opinion the same principle applies here.

The present case is readily distinguishable from *People* v. *Moran* (123 N. Y. 254); *People* v. *Gardner* (144 id. 119), and *People* v. *Moore* (142 App. Div. 402; affd., 201 N. Y. 570), where the act which the defendant in each case attempted to accomplish would, if successful, have constituted a crime. Here the acts of the defendant could not, under any circumstances, have violated the statute for they were not committed with relation to the class of persons designated therein.

It seems to me inaccurate to say that the violation of a statute "depends upon the mind and intent of the wrongdoer and not on the effect or result upon the intended victim" or that the judgment should be affirmed because the defendant "did everything in his power to violate the law." These expressions fail to distinguish between an "intent" and an "attempt" to violate the law. The law is not concerned with mental operations, however depraved, even though coupled with some overt acts (*People* v. *Rizzo*, 246 N. Y. 334), unless they assume the character of an attempt to do that which, if consummated, would constitute a crime. It is true that such expressions and others of like import may be found in *People* v. *Moran* (*supra*) and *People* v. *Gardner* (*supra*). In *People* v. *Jaffe* (*supra*), however, they were declared to be inapplicable "where, if the accused had completed the act which he attempted to do, he would not be guilty of a criminal offense."

I accordingly dissent and vote to reverse the judgment of conviction and to dismiss the information.

Judgment affirmed.