OPINION OF THE COURT
Robert M. Haft, J.
Defendant stands indicted of the crime of attempted grand larceny in the second degree by extortion (for threatening to harm the business of the complainant) (Penal Law, § 155.05, subd 2, par [e], cl [ix]) and of commercial bribe receiving in the first degree (for soliciting a bribe from the complainant) (Penal Law, § 180.08). He moves to dismiss the indictment claiming that as a matter of law an indictment for attempted extortion and commercial bribe receiving cannot be based on the same facts; and that the evidence before the Grand Jury was insufficient to warrant either count.
The first issue raised is complex but can be resolved by reference both to recognized rules of statutory construction and the only Court of Appeals decision providing any interpretive or police guidance, People v Dioguardi (8 NY2d 260). This case and its fact pattern also provide the court with the opportunity to explore and clarify the law of *339 extortion and bribe receiving. After careful analysis, however, each of defendant’s contentions must be rejected.
In the light most favorable to the People (People v Termini, 65 AD2d 825, 826; CPL 210.30, 70.10), the testimony before the Grand Jury can be said to have disclosed the following scenario:
Defendant was a purchasing agent for Consolidated Edison Company of New York, Incorporated (Con Ed). He worked directly with outside contractors and their engineers to assist them in putting together bids on Con Ed projects. Under Con Ed rules, when all the bids were in, he would deduct from the amount of the bid a “scrap allowance,” supposedly based on the scrap value of the Con Ed machinery to be replaced by the contractor; the balance would constitute the final bid. The rationale behind the rule was that the scrap could be resold by the contractor for the “scrap allowance” sum. After making calculations on each contractor’s bid, defendant would forward all of them to his supervisors with his recommendations. Defendant was not allowed to accept money or property for his personal use from bidders.
In 1980 through 1981, defendant was made responsible for assembling and evaluating bids on four separate repair projects involving the replacement of “heat exchangers” in two Con Ed plants — Ravenswood (Queens) and 74th Street (Manhattan). The total value of the contracts was at least $1.3 million. The Quabbin Company (Quabbin), represented by its vice-president, Jay Mulligan (Mulligan), sought to bid on each of the four projects. While the bids were still being assembled, defendant told Mulligan that he thought he (defendant) was entitled to a 10% commission for all the work he was doing for Quabbin and that he could manipulate the scrap allowances so that Quabbin would be the low bidder. Mulligan first dismissed this as a joke. However, when Mulligan later called him in respect of some of the specifications on the projects, defendant said that his commission was adding up. Finally, when Mulligan met with defendant and defendant’s co-worker John Huza (Huza) to discuss details of the bids, defendant said that a 3% commission was called for on orders the size of these projects. In response, Mulligan stated that he would *340 agree to come to defendant’s “housewarming party” in Indiana, where defendant said he was taking a new job. Defendant said that it was a “deal,” that he would use “erasures” to manipulate the scrap allowances so that Quabbin would be low bidder on each project, assuming Mulligan came to the “housewarming party,” and that Huza would be his guarantee. He further stated that the reason Quabbin had not gotten Con Ed orders in the past was that it did not know how to “work the system.”
In a subsequent recorded telephone conversation between defendant and Mulligan, defendant confirmed the agreement but added that Quabbin would probably only get three of the four projects though he had tried to “correct it,” had “manipulated the * * * materials” and had recommended Quabbin for all four projects.
May a Grand Jury properly indict defendant for both attempted grand larceny by extortion and commercial bribe receiving based on the same facts? Prior to 1965 and certain amendments to the Penal Law, it was quite well established in New York that the crimes of extortion and bribery were mutually exclusive. The definitive case, as noted, is People v Dioguardi (8 NY2d 260, supra). The defendants there were convicted of extortion for demanding kickbacks from their victim in return for labor peace. They argue on appeal that at most they were guilty of bribe receiving but could not be legally convicted of extortion since the two crimes were mutually exclusive. (People v Dioguardi, supra, p 273.) Relying on Hornstein v Paramount Pictures (22 Misc 2d 996, 1003, 1006, affd 266 App Div 659, affd 292 NY 468) the Court of Appeals agreed that bribery and extortion were mutually exclusive offenses and that proof of one would preclude conviction for the other. Judge Froessel unequivocally concluded that (p 275): “It is compulsion that distinguishes extortion from bribery * * * Bribery is unqualified ‘voluntary giving’ (Hornstein v. Paramount Pictures, supra, p. 1003).” The court was especially concerned that the labor bribery statute at the time made “the payor equally as guilty as the payee, which could never be the case with extortion.” (People v Dioguardi, supra, pp 273, 276.) The court therefore went on to hold (p 274) that although a reasonable jury *341 could have found the defendants guilty of the extortion charge, they were entitled to an instruction that if the jury found that the “victim” had been guilty of bribery, the defendants could not be guilty of extortion. (Cf. People v Bollino, 31 AD2d 740; United States v Addonizio, 451 F2d 49, cert den 405 US 936 [relying on People v Dioguardi]; United States v Hyde, 448 F2d 815 [Wisdom, J., relying on People v Dioguardi], cert den 404 US 1058.) Thus, after Dioguardi, petit juries in New York could only convict alleged extortioners/bribe receivers of one crime or the other. “This frequently placed prosecutor and court in the precarious position of being forced to choose between two crimes having the finest of distinctions, and permitted highly technical but possibly effective defense argumentation that the wrong offense was prosecuted or submitted to the jury.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 200.15, p 419.)
In 1965, the Legislature expressed, its dissatisfaction with the Dioguardi distinction between bribery and extortion. By enacting section 155.10 of the Penal Law it made substantial revisions in the statutory relationship between the two crimes. That section provides as follows: “The crimes of (a) larceny committed by means of extortion and an attempt to commit the same, and (b) bribe receiving by a labor official as defined in section 180.20, and bribe receiving as defined in section 200.05, are not mutually exclusive, and it is no defense to a prosecution for larceny committed by means of extortion or for an attempt to commit the same that, by reason of the same conduct, the defendant also committed one of such specified crimes of bribe receiving.” Section 180.20 of the Penal Law defines the offense of bribing a labor official, and section 200.05 of the Penal Law relates to the bribery of public servants. In counterparts to section 155.10 of the Penal Law sections 180.30 and 200.15 of the Penal Law reiterate that the crimes of bribe receiving by labor officials and public servants, respectively, are not mutually exclusive of larceny or attempted larceny by extortion and go on to state that conduct constituting extortion does not constitute a defense to a bribe-receiving charge.
*342 Notably, the Legislature did not provide for such a change in respect of commercial bribe receiving. Accordingly, under the recognized" statutory construction rule of “expressio unius est exclusio alterius,” it must be concluded, absent any other expression of the Legislature’s intent, that the Legislature did not intend to change the rule of Dioguardi (supra) with respect to the commercial bribe-receiving crimes. Thus, at first blush, Dioguardi would seem to suggest that this defendant cannot be charged and convicted of both attempted extortion and commercial bribe receiving.
However, the decision actually compels the opposite result. The Court of Appeals was willing to force juries to split hairs in deciding which crime had been committed. (People v Dioguardi, 8 NY2d 260, 273-274.) But it did so only because of the logical inconsistency between a crime involving compulsion by one guilty party and one involving a voluntary agreement by two guilty parties. In contrast to the Dioguardi prosecution, the indictment at bar charges attempted extortion, not extortion, and the solicitation of a bribe, not its actual receipt. Under the People’s theory of the case there is no incongruity: both allegations point to guilt only on the defendant’s part.
There are sound policy reasons why an indictment for both charges should be permitted. Any line drawn between solicitation and the attempted compulsion with which defendant is charged is bound to be perilously thin. Indeed, every solicitation would seem to imply some amount of coercion. As the Tenth Circuit Court of Appeals stated in United States v Hall (536 F2d 313, 321): “[i]t cannot be said that in a bribery case there is never an aspect of coercion on the part of the bribee.” At least one other court has specifically held that solicitation of a bribe can be an attempted extortion. (State v Begyn, 34 NJ 35; see, also, United States v Phillips, 577 F2d 495, 503, cert den 439 US 831; United States v Furey, 491 F Supp 1048,1057, cert den 451 US 913; Finley v State, 84 Okla Crim 309.)
Even were the two counts of the indictment legally inconsistent, the CPL does not seem to contemplate dismissal on such a ground. CPL 200.20 (subd 2, par [a]) allows joinder of offenses “based upon the same act or upon *343 the same criminal transaction.” CPL 300.40 (subd 5) instructs that “[i]f an indictment contains two inconsistent counts, the court must submit at least one thereof” to the petit jury which has heard the case in full. A reviewing court should not dismiss a count therefore even if the crimes charged are mutually exclusive. (People v Daghita, 301 NY 223, 228; People ex rel. Green v La Vallee, 15 AD2d 614; People v Silverman, 106 Misc 2d 468.)
Having determined that the two counts of the indictment should not be dismissed as legally inconsistent, one can turn to the question of whether the facts presented to the Grand Jury sustain a bribe-receiving charge. Commercial bribe receiving in the first degree is defined in pertinent part as follows: “An employee * * * is guilty of commercial bribe receiving in the first degree when, without the consent of his employer * * * he solicits * * * any benefit from another person upon an agreement or understanding that such benefit will influence his conduct in relation to his employer’s * * * affairs, and when the value of the benefit solicited * * * exceeds one thousand dollars.” (Penal Law, § 180.08.)
In this case, the only element of the crime which presents any difficulty is the element of solicitation. The Funk & Wagnalls New Comprehensive International Dictionary of the English Language (1978 Encyclopedic ed) defines “solicit”:
1. To ask for earnestly; seek to obtain by persuasion or entreaty.
2. To beg or entreat (a person) persistently.
3. To influence to action; tempt; especially, to entice (one) to an unlawful or immoral act.
The Grand Jury could easily have inferred that defendant’s bringing forth the suggestion of a commission constituted a solicitation, especially when a specific percentage was mentioned. Defendant also indicated that in return for a “housewarming present” he would do his best to see that Quabbin was awarded each of the four contracts, even though he eventually conceded that his influence might not be sufficient to secure all of them. (Cf. People v Adams, 86 Misc 2d 634.) This type of commercial bribe seeking is *344 exactly the kind of activity the statute was meant to prohibit. (See People v Jacobs, 309 NY 315; Sears, Roebuck & Co. v Kelly, 1 Misc 2d 624; People v Davis, 33 NY Grim Rep 460; United States v Seregos, 655 F2d 33 [interpreting New York commercial bribery statute].)
But are the facts here also sufficient to support the more serious attempted extortion charge? Grand larceny in the second degree is defined as follows: “A person is guilty of grand larceny in the second degree when he steals property and when the value of the property exceeds one thousand five hundred dollars.” (Penal Law, § 155.35.)
In defining larceny, section 155.05 of the Penal Law states that:
“2. Larceny includes a wrongful taking, obtaining or withholding of another’s property * * * committed in any of the following ways * * *
“(e) By extortion.
“A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will * * *
“(ix) Perform any * * * act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his * * * business.”
Finally, section 110.00 of the Penal Law defines an attempt to commit a crime as: “A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.”
Specifically, the issue is whether under the facts presented, defendant attempted to compel Quabbin (via Mulligan) to make payments to him by instilling “a fear that” if it did not, defendant would cause some harm to Quabbin’s business.
For an attempt at any crime to be charged, a defendant must have intended to do a specific criminal act and acted to carry out his intent. (People v Bracey, 41 NY2d 296,300.) *345 A defendant must accomplish more than a mere overt act towards accomplishment of the crime. “Acts in furtherance of a criminal project do not reach the stage of an attempt unless they carry the project forward within dangerous proximity to the criminal end to be attained”. (People v Werblow, 241 NY 55, 61 [Carduzo, J.].)
In evaluating the' adequacy of the facts presented, it must be determined whether defendant intended to create in Quabbin or Mulligan a fear that their business would be harmed if his demands were not met and that the acts taken in furtherance of this goal were sufficient to bring his enterprise dangerously close to realization.
The facts presented to the Grand Jury can be said to demonstrate that defendant had the requisite specific intent to extort money from Mulligan and Quabbin. Defendant made it sufficiently clear that if he did not get his commission, Quabbin would not be awarded any of the contracts. This conclusion is supported by defendant’s numerous references to commissions and his comment that the reason Quabbin had not been awarded projects before was that it did not know how to “work the system.”
But, is it necessary that defendant’s threats actually induce the fear he sought to instill in order to charge him with attempted extortion? At least one New York trial court has so held. (People v Reid, 95 Misc 2d 777.) But this decision seems to fly in the face of a whole line of New York cases holding that the making of threats with the intent to induce fear is sufficient, even if there is no actual fear. (See People ex rel. Perry v Gillette, 200 NY 275; People v Gardner, 144 NY 119; People v Misiani, 148 App Div 797; People v Slocum, 97 Misc 2d 728; People v Wenk, 71 Misc 368; People v Vidaver, 60 Misc 1.)
It is the state of mind coupled with the actions of the defendant which are significant. To require that a defendant must actually achieve his criminal aim would be to undercut the usefulness of the attempt statute, dealing as it does with criminal enterprises before they reach fruition. (See People v Gardner, supra; LaFave and Scott, Handbook on Criminal Law, pp 426-427.) The actual causing of fear in the mind of the victim should not be a required element of the crime of attempted extortion.
*346 In this case, the alleged threats by which defendant hoped to induce fear were implicit rather than explicit. The threats could well be inferred from a number of defendant’s declarations, as described above. The fact that the threats were implied is no bar to finding that they actually existed. “Threats which, by their nature, are illegal are generally not publicly expressed nor memorialized in writing. Indeed, threats can be made and clearly understood without verbal communication.” (People v Court, 52 AD2d 891, 892, affd 43 NY2d 817; accord People v Thompson, 97 NY 313.) Furthermore, the fact that the relations between defendant and Mulligan could be construed as cordial and friendly is not necessarily inconsistent with a finding that threats were made. (People v Thompson, supra; People v Barbato, NYU, Sept. 7, 1979, p 13, col 2; United States v Hedman, 630 F2d 1184,1194, cert den 450 US 965; United States v DeMet, 486 F2d 816, 820, cert den 416 US 969; United States v Rastelli, 551 F2d 902, cert den 434 US 831.)[1]
A slightly more difficult question is whether a threat to prevent an award of a future contract qualifies as a threat to harm a business. Run-of-the-mill extortion cases involve threats that supplies for a business will be cut off (People v Wisch, 58 Misc 2d 766), that a business will be shut down by illegal labor actions (People v Dioguardi, 8 NY2d 260, supra),[2] that permits to build will be denied to builders (People v Moran, 306 NY 662), and that all accounts will be taken away (United States v Clemente, 640 F2d 1069). Such threats go to the core of a business, threatening its very existence. In this case, however, defendant is alleged to have threatened that a future benefit to Quabbin would be denied if his demands were not met.
Only one case has found such a distinction meaningful. In United States v Kubacki (237 F Supp 638) the court held that a threatened loss of orders was not a sufficient threat, stating that disappointment over failure to get new business was insufficient to charge extortion. Other courts *347 confronting the question have decided that a threatened loss of future business is quite enough. (See United States v Rastelli, supra, p 904; United States v Cerilli, 603 F2d 415; see, also, United States v Brecht, 540 F2d 45, cert den 429 US 1123.)
Distinctions like those drawn in Kubacki (supra) make no sense because extortion statutes seek to protect a broad range of interests from oppression by those with special powers. In a situation similar to that at bar, the Third Circuit Court of Appeals concluded: “Contractors, engineers, and suppliers, for example, have a right to expect that when they incur time and expense to bid on public projects, they will be awarded contracts when their bids are lowest, and that they will subsequently enjoy the full financial benefits of their efficiency and industry.” (United States v Addonizio, 451 F2d 49, 73, supra.) Accordingly, when kickbacks are demanded in exchange for the award of future contracts, those threats are held to be sufficient. (United States v Rabbitt, 583 F2d 1014; United States v Addonizio, supra.)
The Grand Jury had before it adequate evidence that defendant, with the requisite intent, took all steps necessary to effect the commission of an extortion. He was thus properly charged with attempted extortion. All other grounds submitted by defendant have been considered and found untenable. The motion is denied.

. Rastelli interpreted the Hobbs Act (US Code, tit 18, § 1951), which was modelled on the New York extortion law. (United States v Enmons, 410 US 396; United States v Hyde, 448 F2d 815, 834 [interpreting the Hobbs Act, and looking to New York extortion law].)

. See, also, cases in annotations to Hobbs Act (US Code, tit 18, § 1951).