**NATIONAL ELECTRICAL BENEFIT FUND, et al., Plaintiffs,**

v.

**HEARY BROTHERS LIGHTNING PRO- TECTION COMPANY, INC., et al., De- fendants/Third–Party Plaintiffs,**

v.

**LOCAL 41, INTERNATIONAL BROTH- ERHOOD OF ELECTRICAL WORK- ERS, et al., Third–Party Defendants.**

No. 91–CV–717A.

United States District Court, W.D. New York.

July 28, 1995.

174

David H. Potts–Dupre, Counts & Kanne, Chartered, Washington, D.C., for Plaintiff NEBF.

Craig L. Miller, Diebold & Farmelo, P.C., Buffalo, NY, for Plaintiffs Local 41 IBEW Health, Pension and Annuity Funds.

Linda H. Joseph, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for Defendants/Third–Party Plaintiffs Heary Bros., Kenneth P. Heary and Edwin W. Heary.

Jules L. Smith, Blitman & King, Rochester, NY, for Third–Party Defendant Local 41 IBEW.

Terrence M. Connors, Connors & Vilardo, Buffalo, NY, for Third–Party Defendants Charles H. Pillard and Gene N. Adams.

Richard J. Barnes, Morris, Cantor & Barnes, Buffalo, NY, for Third–Party Defendants John Pavlovic and Michael Franey.

Joseph D. Bermingham, Bermingham, Cook & Mahoney, Buffalo, NY, for Third–Party Defendant Daniel E. Erker.

Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, D.C., for Third–Party Defendant IBEW.

Michael Babat, Buffalo, NY, for NECA.

## DECISION AND ORDER

ARCARA, District Judge.

Plaintiffs, the National Electrical Benefit Fund ("NEBF") and the Health, Pension, and Annuity Funds of Local 41 International Brotherhood of Electrical Workers ("Local 41 Funds") brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* seeking monetary and injunctive relief to redress violations of § 515 of ERISA, 29 U.S.C. § 1145. In their answer, Heary Brothers Lightning Protection Company, Inc., Kenneth P. Heary and Edwin W. Heary (collectively "defendants/third-party plaintiffs") asserted various affirmative defenses and counterclaims. Defendants/third-party plaintiffs filed an Amended Third–Party Complaint asserting, *inter alia,* violations of

the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

This case was referred to Magistrate Judge Carol E. Heckman on June 21, 1993, pursuant to 28 U.S.C. § 636(b)(1). On March 29, 1994, Magistrate Judge Heckman filed a Report and Recommendation recommending:

(1) granting plaintiff NEBF's motion for partial summary judgment[1] on the issue of liability and entering judgment in favor of all plaintiffs on the liability portion of their ERISA delinquency claim;

(2) granting NEBF's motion to sever the third-party action;

(3) granting in their entirety third-party defendants International Brotherhood of Electrical Workers' ("IBEW") and National Electrical Contractor's Association's ("NECA") motions to dismiss the Amended Third–Party Complaint and dismissing those parties from the case;[2]

(4) granting third-party defendant Local 41 of the International Brotherhood of Electrical Workers' ("Local 41") motion to dismiss the Amended Third–Party Complaint to the extent that Counts Seven, Eight and Nine allege Local 41 to be a RICO enterprise and denying Local 41's motion to dismiss in all other respects;

(5) granting third-party defendants Charles H. Pillard, Gene Adams, John Pavlovic, Michael Franey, Daniel E. Erker and David A. Roll's (collectively "remaining third-party defendants") motions to dismiss to the extent that they request dismissal of Counts One, Two, Three, Thirteen, Fourteen and Fifteen of the Amended Third–Party Complaint;

(6) denying the remaining third-party defendants' motions to dismiss the Amended Third–Party Complaint with respect to Counts Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve.

---

1. Only NEBF filed a motion for partial summary judgment. Item No. 58.

2. A Stipulated Notice of Dismissal dismissing NECA was filed on November 1, 1994. Item No. 138.

Magistrate Judge Heckman also ordered that: (a) defendants/third-party plaintiffs' motion for leave to amend the Third–Party Complaint be granted; and (b) NECA's motion for sanctions be denied.

Defendants/third-party plaintiffs and third-party defendants filed objections to the Report and Recommendation. In addition, third-party defendants Charles H. Pillard and Gene Adams appeal the order granting defendants/third-party plaintiffs' request for leave to amend.[3] The Court heard argument on November 1, 1994.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation and of the record, and after reviewing the submissions and hearing argument, the Court adopts the proposed findings of the Report and Recommendation. Accordingly, for the reasons therein:

(1) NEBF's motion for partial summary judgment is GRANTED and judgment is entered in favor of all plaintiffs with respect to their claims of liability under § 515 of ERISA. As a consequence of granting judgment in favor of all plaintiffs, the counterclaims and affirmative defenses asserted by defendants/third-party plaintiffs in the Second Amended Answer are necessarily DISMISSED;

(2) NEBF's motion to sever the third-party action is GRANTED;

(3) third-party defendants IBEW and NECA's motions to dismiss the Amended Third–Party Complaint are GRANTED in their entirety and are DISMISSED;

(4) third-party defendant Local 41's motion to dismiss the Amended Third–Party Complaint is GRANTED to the extent that Counts Seven, Eight and Nine allege Local 41 to be a RICO enterprise. Local 41's motion to dismiss is DENIED in all other respects;

(5) the remaining third-party defendants' motions to dismiss are GRANTED with respect to Counts One, Two, Three, Thirteen, Fourteen and Fifteen of the Amended Third–Party Complaint;

(6) the remaining third-party defendants' motions to dismiss the Amended Third–Party Complaint are DENIED with respect to Counts Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter under this subparagraph (A), where it has been shown that the magistrate's order is clearly erroneous or contrary to law."

Having carefully reviewed Magistrate Judge Heckman's order granting defendants/third-party plaintiffs' request for leave to amend, and the submissions, and after hearing argument from counsel, the Court finds that the order is neither clearly erroneous or contrary to law.

Accordingly, the Court affirms Magistrate Judge Heckman's order granting defendants/third-party plaintiffs' request for leave to amend.

IT IS ORDERED that this matter is referred back to Magistrate Judge Heckman for determination of the amount of damages due plaintiffs' on their claims arising under § 515 of ERISA and for further proceedings consistent with this Decision.[4]

IT IS SO ORDERED.

## ORDER AND REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). The following constitutes the undersigned's proposed findings and rec-

---

**3.** Although defendant/third-party plaintiffs, Pillard and Adams characterized their appeals as objections to the Report and Recommendation, the Court's review is pursuant to 28 U.S.C. § 636(b)(1)(A).

**4.** In addition to the determination of the amount of damages owed plaintiffs, the claims remaining in this action are Counts Four, Five, Six, Seven, Eight, Nine, Ten, Eleven and Twelve of the Amended Third–Party Complaint.

ommendations for the disposition of the several motions pending.

## BACKGROUND

This action, brought under § 515 of the Employee Retirement Income Security Act ("ERISA"), was filed on November 1, 1991, by fiduciaries of the National Electrical Benefit Fund ("NEBF") and the health, pension and annuity funds of Local 41 of the International Brotherhood of Electrical Workers ("IBEW" or the "International"). Named as defendants are Heary Bros. Lightning Protection Co. and its corporate officers, Kenneth P. Heary and Edwin W. Heary (collectively, the "Hearys"). On January 16, 1992, an amended complaint was filed before defendants answered or otherwise appeared in the action (Item 2). The amended complaint, which did not substantially change the allegations in the original complaint, sets forth five claims for monetary and injunctive relief based on defendants' alleged failure to contribute to the plaintiff funds, as required by ERISA and the terms of various collective bargaining agreements or letters of assent entered into between IBEW and defendants.

NEBF alleges that the Hearys first entered a collective bargaining relationship with IBEW in 1964 when Heary Bros. executed a "Letter of Assent–B," effective from May 1, 1964 through April 30, 1966. A "Letter of Assent" is a typical short-form agreement by which an employer agrees to be bound by a collective bargaining agreement already negotiated, or about to be negotiated, between a local union and the employer's collective bargaining representative. A "Letter of Assent–B" binds the employer to an existing agreement and is of limited duration. A "Letter of Assent–A" establishes an ongoing relationship between the employer and the collective bargaining representative and binds the employer to the agreement from year to year until the relationship is terminated by the employer (*see* Reilly Aff., ¶ 9, and Ex. A thereto, attached to Item 58).

Under the 1964 Letter of Assent–B, Heary Bros. expressly agreed to be bound by the Inside Wiremen's Agreement then in effect. Heary Bros. subsequently executed additional Letters of Assent–B effective from May 1, 1969 through April 30, 1972, and from May 1, 1972 through April 30, 1973. Heary Bros. also executed a series of Letters of Assent–A, the last of which became effective on July 16, 1979 (Reilly Aff., Ex. A). Finally, Heary Bros. entered a Specialty Agreement with IBEW effective April 1, 1979 (Item 2, ¶¶ 16–17; Reilly Aff., Ex. B).

NEBF's ERISA claim is based on the results of an audit conducted in 1990 which concluded that for the period of 1985 through mid–1990, Heary Bros. failed to report fully the wages earned and hours worked by its employees, resulting in underpayments of principal contributions for that period in the amounts of $64,260.88 to NEBF (Item 2, ¶ 39), $209,279.55 to the Local 41 health fund (*id.*, ¶ 44), $272,866.75 to the pension fund (*id.*, ¶ 49), and an unspecified amount to the annuity fund (for which plaintiffs request an accounting) (*id.*, ¶ 53).

On March 5, 1992, the Hearys moved to stay the action pending the outcome of a criminal investigation that was being conducted by the United States Attorney's office. Defendants claimed that their defense of the civil action would ultimately be based on the alleged illegality of the collective bargaining agreements, and that those same agreements were also the basis for the pending criminal investigation (Item 4). This motion was joined by the United States Attorney (Item 7). On March 31, 1992, the district court entered an order staying this action until July 24, 1992, giving defendants until that date to answer or otherwise respond to the amended complaint (Item 13). Defendants' subsequent motion for an additional stay was denied (Item 19), and defendants answered the amended complaint on July 31, 1992, asserting various affirmative defenses based on the alleged illegality or unenforceability of the collective bargaining agreements and letters of assent at issue (Item 20). The criminal investigation is still pending as of the date of this report and recommendation.

On June 10, 1993, the Hearys filed a third-party complaint against Local 41, the IBEW, and various current and former union officers, and against the Western New York Chapter of the National Electrical Contrac-

tors Association ("NECA") and its executive director. The third-party complaint sets forth thirteen causes of action alleging illegality or unenforceability of the collective bargaining agreements and letters of assent, breach of contract, negligence, intentional tort, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 et seq. (Item 38). On that same date, the Hearys filed an amended answer with sixteen affirmative defenses and nine counterclaims based on the same allegations set forth in the third-party complaint (Item 39). On July 19, 1993, a "corrected" third-party complaint was filed, without substantive changes.

The third-party complaint alleges generally that, beginning in the 1960's and continuing until approximately 1991, IBEW and Local 41 officers engaged in an extortion scheme whereby Heary Bros. employees were granted access to union construction sites in order to perform contracts for the installation of lightning protection systems on commercial buildings, in exchange for illegal cash "pay-offs" which the Hearys were directed to deposit in secret at various locations. As part of this alleged scheme, the Hearys were required to enter into "sham" collective bargaining agreements with IBEW and to deliver "bogus" union election votes on behalf of their employees. The Hearys allege that this scheme constitutes a RICO pattern of racketeering activity based on predicate acts of extortion, in violation of the Hobbs Act (18 U.S.C. § 1951) and state law, and unlawful demands for payment of monies, in violation of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 186(b) (also referred to as the "Taft–Hartley Act").

On August 6, 1993, individual third-party defendants Gene Adams and Charles Pillard answered the third-party complaint against them. At approximately the same time, each of the remaining third-party defendants moved to dismiss the third-party complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Adams and Pillard subsequently filed Rule 12(b)(6) motions. In addition, third-party defendant NECA moved in the alternative for summary judgment, and for Rule 11 sanctions. The original plaintiff NEBF answered the counterclaim against it, and moved for partial summary judgment to determine the Hearys' liability under ERISA and to dismiss the counterclaims and affirmative defenses asserted against it, as well as to strike or sever the third-party claims from the suit. The plaintiff funds also moved to dismiss the counterclaims and affirmative defenses asserted against them.

Meanwhile, on October 15, the Hearys moved to amend the third-party complaint. The proposed amended complaint deletes Count Four, which sought declaratory relief as to the Hearys' obligations under the express terms of the collective bargaining agreements, based on the Hearys' recognition that such a claim would be preempted by federal labor law. The proposed amended complaint also deletes individual third-party plaintiffs Edwin and Kenneth Heary as RICO plaintiffs, in recognition of their lack of shareholder standing, and further amplifies the federal and state statutory bases for the alleged RICO predicate acts.

Each of these motions will be discussed in turn.

### DISCUSSION

#### I. Motion to Amend the Third–Party Complaint.

Rule 15(a) of the Federal Rules of Civil Procedure provides in relevant part as follows:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Only NEBF and third-party defendants Adams and Pillard have filed responsive pleadings to the third-party complaint. The remaining third-party defendants have filed dispositive motions in lieu of answers.

 Leave to amend should be given in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the party seeking

amendment, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the amendment. *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 925 (S.D.N.Y.1989) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *see generally* Moore's Federal Practice ¶ 15.08. There is no showing that any such reason exists in this case. Furthermore, allowance of the amendment would serve the interests of justice because it would delete preempted claims and result in a better overall definition of the claims presented in the case.

Accordingly, leave to amend the third-party complaint is granted, and the amended complaint shall be filed with the Clerk of the Court. Responsive pleadings shall be filed in accordance with the requirements of the Federal Rules of Civil Procedure and the Local Rules for the Western District of New York.

## II. NEBF's Motion for Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Co., Inc. v. AnnTaylor, Inc., supra*, 933 F.2d at 167.

NEBF moves for partial summary judgment as to the Hearys' liability under ERISA. NEBF contends that there are no material factual disputes regarding the Hearys' obligation to contribute to the various employee benefit funds. According to NEBF, the 1990 audit clearly shows that the Hearys' failed to meet that obligation, mandating entry of judgment on NEBF's ERISA claims.

The Hearys oppose this motion on the ground that the collective bargaining relationship with IBEW was tainted from the outset by Local 41's extortion scheme, thereby nullifying their contractual obligation to contribute to the employee benefit funds. The Hearys contend that material factual issues therefore exist regarding the validity of the collective bargaining agreements or Letters of Assent relied upon by NEBF, precluding summary judgment on ERISA liability.

Section 515 of ERISA provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

29 U.S.C. § 1145. The liability created by this section may be enforced by the trustees of an employee benefits plan by bringing an action in federal district court pursuant to § 502, 29 U.S.C. § 1132.

■ As the Second Circuit has recognized, the purpose of § 515 is to "permit trustees of plans to recover delinquent contributions efficaciously, and without resort to issues which might arise under labor-management relations law—*other than 29 U.S.C. § 186*." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990) (emphasis added) (quoting 126 Cong.Rec. 23,039 (1980) (remarks by Rep. Thompson)). Only two very limited defenses are available to an employer when sued by plan trustees to recover delinquent payments under § 515: (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void, and not merely voidable. *Id.* "Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id.* This is because employee benefit funds, as "third party beneficiaries" to collective bargaining agreements, have been placed by Congress in a position superior to that of the original promisee. "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Id.* (citing *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1151 (7th Cir.1989)).

The Hearys characterize their defenses to the ERISA delinquency action as involving *both* illegal pension contributions *and* a void (not merely voidable) collective bargaining relationship. This is based on their allegations that the local union has demanded illegal payments in return for allowing Heary Bros. employees access to union job sites, in violation of the Labor Management Relations Act, 29 U.S.C. § 186, and the Hobbs Act, 18 U.S.C. § 1951. According to the Hearys,

these are precisely the kinds of allegations recognized by the *Benson v. Brower's* case, and by the Supreme Court in *Kaiser Steel Corporation v. Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), as sufficient to interpose an "illegality" defense to an ERISA delinquency claim under § 515.

*Kaiser Steel* dealt with an ERISA deficiency claim, brought prior to the enactment of § 515, by trustees of the United Mine Workers Union Health and Retirement Funds. The trustees alleged that the defendant coal producer failed to comply with a clause in the collective bargaining agreement which required contributions to the fund based on amounts of coal purchased from other producers who were not covered by the agreement. The coal producer defended the action by asserting that the purchased-coal clause of the agreement was illegal as a violation of federal labor and antitrust laws. The Supreme Court agreed, holding that the clause could not be enforced "without commanding unlawful conduct." *Kaiser Steel, supra,* 455 U.S. at 79, 102 S.Ct. at 857. The Court stated:

> [The employer] ... did not make a naked promise to pay money to the union funds. The purchased-coal provision obligated it to pay only if it purchased coal from other employers and then only if contributions to the [union] funds had not been made with respect to that coal. [The employer]'s obligation arose from and was measured by its purchases from other producers. If [the employer]'s undertaking is illegal under the antitrust or labor laws, it is because of the financial burden which the agreement attached to purchases of coal from non-[union] producers, even though they may have contributed to other employee welfare funds.

*Id.*

■ Section 515 was added to ERISA in 1980 as a means of foreclosing defenses "unrelated" or "extraneous" to "simple collection actions brought by plan trustees...." *Id.* at 87–88, 102 S.Ct. at 861–62. The *Kaiser Steel* Court examined the legislative history of § 515 and found nothing to indicate congressional intent to foreclose the employer from raising "a defense based on the illegality of

the very promise sought to be enforced." *Id.* at 88, 102 S.Ct. at 862.

Based on the collective bargaining provisions applicable to this case, the Hearys' reliance on the holding in *Kaiser Steel* is misplaced. Item 4 of the April 1, 1979 Specialty Agreement provides as follows:

> The Employer agrees to comply with all the terms and conditions of the approved applicable local collective bargaining agreement, including the [NEBF], the National Electrical Industry Fund, and/or the local Joint Apprenticeship Training Fund, in the area where the work is being performed; EXCEPT that the Employer shall continue to pay into the IBEW Local Union *41* Pension Fund and Health and Welfare Fund on his *permanent Employees,* in lieu of contributing to similar Funds in the area where the work is being performed. Any difference in contribution shall be adjusted in the basic wage rate so that the permanent Employees and the Employees secured locally receive the equivalent of the total package of benefits as set forth in the local agreement.

(Reilly Aff., Ex. B, p. 1, attached to Item 58) (emphasis supplied). The Fringe Benefit provision of the Inside Wiremen's Agreement between Local 41 of the IBEW and the Western New York Chapter of NECA has remained substantially unchanged throughout the course of the Hearys' collective bargaining relationship with IBEW. This provision states in relevant part as follows:

> It is agreed that in accord with the National Benefit Agreement entered into between [NECA] and [IBEW] on September 3, 1946, as amended, that unless authorized otherwise by the National Employees Benefit Board, the individual employer will forward monthly to the designated Local Employees Benefit Board an amount equal to 3% of his gross monthly labor payroll, which he is obligated to pay to the employees in this bargaining unit....

(§ 4.01 of Inside Wiremen's Agreement, Item 73, Exs. 2(I)–(L)).

The Hearys have not demonstrated that these provisions violate federal law. The benefit fund contributions required by the agreements are not contractually tied to any illegal undertaking, as were the contributions in the *Kaiser Steel* case. The alleged "extortion scheme" detailed by the Hearys involved separate payments to union officials to obtain job site access. There are no allegations that these illegal payments were earmarked by the union to be used as employee benefit fund contributions. Thus, the Hearys have not demonstrated that the contributions themselves were "inconsistent with law ...," 29 U.S.C. § 1145, in any way that would prevent this court from entering judgment on the Hearys' ERISA delinquency liability without regard for defenses "unrelated" or "extraneous" to their contractual promise to pay. *Kaiser Steel, supra* at 88, 102 S.Ct. at 862; *see also Berry v. Garza,* 919 F.2d 87, 90 (8th Cir.1990) (relying on *Benson v. Brower's* to hold that employer's entry into facially valid collective bargaining agreement in order to obtain union work estopped employer from asserting unenforceability of agreement based on union's lack of majority status); *Washington Area Carpenters' Welfare Fund v. Overhead Door Co.,* 681 F.2d 1, 4–5 (D.C.Cir.1982), *cert. denied,* 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983) (payments to funds under non-enforceable "prehire" agreements would not be illegal themselves, as would payments under the "purchased coal clause" in *Kaiser Steel*).

The analysis turns then to whether the collective bargaining agreements between the Hearys and IBEW were void *ab initio.* The Hearys argue that the collective bargaining relationship was invalid from the outset because it was only entered into so that the union could extract illegal pay-offs in return for job-site access. The cases have recognized an important distinction between defenses to delinquency actions based on allegations of "fraud in the inducement" and those based on allegations of "fraud in the execution." *See Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773–75 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987) (cited in *Benson v. Brower's Moving & Storage, supra,* 907 F.2d at 314). Only the latter type may be raised by an employer in defense of an ERISA delinquency claim. *Southwest Administrators, Inc. v. Rozay's Transfer, su-*

*pra* at 773; *Agathos v. Starlite Motel,* 977 F.2d 1500, 1505 (3rd Cir.1992).

In *Southwest Administrators, Inc. v. Rozay's Transfer,* the Ninth Circuit explained the distinction between "fraud in the inducement" and "fraud in the execution" as follows:

> The former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is. *See* 12 *Williston on Contracts* § 1488, at 332 (3d ed. 1970). "Fraud in the execution" arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." Uniform Commercial Code § 3–305(2)(c); *see* Restatement (Second) of Contracts § 163 (1981).

791 F.2d at 774.

■ The Hearys contend that the alleged extortion scheme amounted to "fraud in the execution" of the agreement. To maintain this defense, the Hearys must be able to establish "excusable ignorance of the contents of the writing signed." *Id.* (citing U.C.C. § 3–305 comment 7); *Agathos v. Starlite Motel, supra,* 977 F.2d at 1505 (citing J. Calamari & J. Perillo, *The Law of Contracts,* § 17–10 (3d ed. 1087)).

For example, in *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1501 (9th Cir.1984), the owner of a small construction company employing six people was relieved of his ERISA obligation because he had signed a short-form collective bargaining agreement under the mistaken, justifiable belief that he was merely filling out union membership application forms. The Ninth Circuit found that the employer signed the document reasonably believing it to be something quite different than it was, and that therefore the employer could not be bound to the terms of the collective bargaining agreement requiring him to contribute to the union employee benefit funds. *Id.* at 1504–05.

No such circumstances have been presented in this case, and the Hearys have not convinced the court that any such showing could be made after discovery. The Hearys do not argue that Kenneth Heary signed the Letters of Assent or the Specialty Agreement in ignorance of the contents or significance of those documents. Instead, the essence of the Hearys' position is that they were induced by the union to enter the collective bargaining agreement, which they did in order to gain access to union construction sites. Such a claim sounds in "fraud in the inducement," rendering the collective bargaining agreement "voidable" but not "void." This defense is thus foreclosed as a matter of law by the Second Circuit's holding in *Benson v. Brower's Moving & Storage.* "[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." 907 F.2d at 314.

Further support for this result is contained in the legislative history of the 1980 amendment to § 515, as cited in the *Kaiser Steel* and *Benson v. Brower's* cases. Rep. Thompson's remarks clearly evince congressional concern for the "[f]ailure of employers to make promised contributions in a timely fashion . . . ," and for conversion of simple collection actions into "lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the plan's entitlement to the contributions." 126 Cong.Rec. 23,039 (1980). Discussing this legislative history in his dissent in the *Kaiser Steel* case, Justice Brennan stated:

> With the benefit of legislative history, it is apparent that § [515] was designed to allow an employer to be relieved of a plan contribution obligation *only* when that payment at issue is *inherently* illegal—for example, when the payment is in the nature of a bribe. In sum, illegality defenses, once arguably available whenever the payment in question could be connected with illegal activities or results, are now meant by Congress to be available only when the payment itself constitutes an illegal act.

*Kaiser Steel Corp. v. Mullins, supra,* 455 U.S. at 92–93, 102 S.Ct. at 864 (Brennan, J., dissenting) (emphasis in original). Justice Brennan interpreted the remarks of Rep.

Thompson as evidence of "congressional intention that employers sued by plan trustees should be able to impose an illegality defense only if the claimed illegality resided *in the payment itself.*" *Id.* at 94–95, 102 S.Ct. at 865 (emphasis in original).

As discussed above, the Hearys claim that their contributions to employee benefit funds should be excused because the collective bargaining agreement is a sham. They have not alleged that the contributions themselves constitute an illegal act. The only illegal payments alleged to have been made are the "pay-offs" or "bribes" in exchange for access to union construction sites. Under *Kaiser Steel* and *Benson,* and in accord with the legislative history of § 515, these allegations are insufficient to defend against the funds' action to collect the Hearys' ERISA deficiency.

In summary, the Hearys have failed to demonstrate that the collective bargaining agreements are void *ab initio* or that the fund contributions themselves are illegal. Accordingly, since there is no material factual dispute as to the availability of any defense to the ERISA delinquency action, NEBF's motion for partial summary judgment should be granted, and judgment should be entered in favor of all of the plaintiff funds on the Hearys' liability under ERISA.

### III. NEBF's Motion to Strike or Sever the Third Party Action.

NEBF asserts that if the court rules in its favor as to the Hearys' delinquency liability under ERISA, the third-party claims brought by the Hearys against the third-party defendants should be stricken or severed from the case because consideration of those claims will unnecessarily delay the damage portion of the delinquency action. NEBF moves under Fed.R.Civ.P. 14(a), which provides that "[a]ny party may move to strike [a] third-party claim, or for its severance or separate trial."

The standard for evaluating whether a third-party claim should be severed from the primary action is the same as the standard for ordering separate trials under Fed. R.Civ.P. 42(b). This Rule provides in pertinent part as follows:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues. . . .

*See Foremost Guaranty Corporation v. Public Equities Corporation,* No. 86 CIV. 6421, 1988 WL 125667, *5–*6 (S.D.N.Y.1988).

In light of the discussion above recommending that the district court enter judgment in NEBF's favor on its claim for ERISA delinquency liability against the Hearys, the court finds that the third-party action should be tried separately. The amount of the delinquency can presumably be determined expeditiously and conveniently, based on available documentary evidence. To further delay collection of the delinquent contributions would prejudice NEBF by depriving it of the ability to utilize those amounts for the benefit of plan participants. This prejudice to NEBF would not be outweighed by the Hearys' legal obligation to contribute to the funds. Furthermore, NEBF is not a party to the third-party action, and should not be required to await the outcome of the Hearys' claims against the third-party defendants.

Accordingly, based on considerations of prejudice and convenience to the parties, as well as expedition and economy of judicial and private resources, NEBF's motion to sever the third-party claims should be granted. *See, e.g., Greene Line Manufacturing Corp. v. Fibreboard Corp.,* 130 F.R.D. 397, 400 (N.D.Ind.1990).

### IV. Motions to Dismiss the Third–Party Complaint Under Rule 12(b)(6).

In determining a motion to dismiss under Rule 12(b)(6), the court must presume that all factual allegations in the complaint are true and make all reasonable inferences in favor of the non-moving party. 2A Moore's Federal Practice ¶ 12.07[2.–5], p. 12–63 (1992); *Miree v. DeKalb Co., Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). However, legal con-

clusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. 2A Moore's, *supra*, at pp. 12–63 through 12–64; *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620 (2d Cir.1972), *cert. denied*, 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). The complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (quoted in *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).

The amended third-party complaint sets forth fifteen claims. All of the third-party defendants seek dismissal of all or some of these claims. These motions are discussed below.

## A. Pre-emption.

Local 41, NECA and IBEW have grounded their Rule 12(b)(6) motions on the preemptive effect of the federal labor laws. According to these third-party defendants, the Hearys' claims for declaratory relief regarding the legality and applicability of the collective bargaining agreements, as well as the claims for negligence, intentional tort, and breach of contract, should be dismissed because such claims are pre-empted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–168.

As a general labor law principle, the National Labor Relations Board ("NLRB") is the exclusive forum to remedy conduct that is arguably protected or prohibited by the NLRA. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). This principle, referred to as "*Garmon* pre-emption," precludes both federal and state court jurisdiction over labor disputes, unless "Congress has provided remedies for prescribed conduct independent of those available in an NLRB proceeding...." *Butchers' Union, Local No. 498 v. SDC Investment, Inc.*, 631 F.Supp. 1001, 1007

(E.D.Cal.1986) (citing *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967)). Thus, labor law pre-emption does not apply if: (1) Congress has expressly carved out an exception to NLRB jurisdiction covering the activity complained of; (2) the activity complained of is merely a peripheral concern of the labor laws; or (3) the activity complained of touches interests deeply rooted in local feeling and responsibility. *Vaca v. Sipes*, *supra* at 179–80, 87 S.Ct. at 910–12; *Brennan v. Chestnut*, 973 F.2d 644, 646 (8th Cir.1992).

The question presented in this case is whether the RICO claims set forth in Counts Four through Twelve of the third-party complaint, which rely on allegations of predicate acts under 29 U.S.C. § 186—a labor statute—are pre-empted as claims involving conduct within the exclusive jurisdiction of the NLRB. In this regard, the court finds the reasoning in *Butchers' Union v. SDC*, *supra*, persuasive. In that case, the court carefully analyzed the competing interests served by the labor law preemption doctrine and the RICO statute, and found it "hard to imagine that Congress would have made § 186 a RICO predicate act without the intention of making violations of § 186, which necessarily arise in the labor context, the basis of a RICO action brought in the district court." *Id.*, 631 F.Supp. at 1007. Thus, the court denied a Rule 12(b)(6) motion to dismiss a RICO claim by the plaintiff union alleging that the employer made illegal payments to a rival union for the purpose of precluding the plaintiff from becoming the employees' bargaining agent, in violation of § 186. According to the court, "properly pled RICO claims relying on § 186 predicate acts are not preempted by the NLRB and questions of labor law properly tendered in such a suit do not require dismissal where the suit otherwise lies." *Id.* at 1009.

In this case, the Hearys allege among other things that the third-party defendants (except NECA) have committed, conspired to commit, or aided the commission of § 186 violations "by repeated and continuing acts of demanding and receiving pay-offs for the issuance of bogus union cards, demanding illegal contributions to the plaintiff pension

funds and demanding and receiving illegal payments for membership fees and dues for illegitimate union members ..." (Proposed Amended Complaint, Item 92, ¶ 74(a)). Such allegations properly state a claim for relief under § 186(b),[1] which is an expressly enumerated RICO predicate act under 18 U.S.C. § 1961(1)(C). Thus, while these allegations also describe conduct proscribed by the NLRA as unfair labor practices, *see, e.g.,* NLRA § 8(b),[2] they are not pre-empted by the NLRA because they state RICO claims which do not require the resolution of labor law questions within the exclusive jurisdiction of the NLRB. *Butchers' Union, supra,* 631 F.Supp. at 1008–09; *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO,* 948 F.2d 98, 105 (2d Cir.1991), *cert. granted and vacated as moot sub nom. Yellow Freight System, Inc. v. United States,* 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992); *United States v. Boffa,* 688 F.2d 919, 931 (3rd Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983).

■■■ The Hearys' non–RICO third-party claims for declaratory relief (Counts Two and Three), negligence (Count Thirteen), breach of contract and breach of fiduciary duty against NECA (Count Fourteen), and intentional tort (Count Fifteen), are preempted by the NLRA. These claims necessarily involve questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, [and] must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985).

The resolution of these claims is dependent upon the court's analysis of the parties' obligations under the terms of the collective bargaining or specialty agreements. "Thus, if plaintiffs recover on their state law claims, it will only be because they have established a violation of federal law." *Gregory v. American Guild of Musical Artists,* 1993 WL 179110, *3 (S.D.N.Y. May 24, 1993); *see also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Dougherty v. American Tel. and Tel. Co.,* 902 F.2d 201, 203–04 (2d Cir.1990).

**B. RICO.**

Counts Four through Twelve of the amended complaint allege RICO violations against all third-party defendants except NECA. Specifically, Count Four alleges violations of 18 U.S.C. § 1962(c).[3] According to Count Four, the IBEW is an "enterprise" [4]

---

**1.** 29 U.S.C. § 186 provides, in relevant part:

(a) It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

\* \* \* \* \* \*

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce....

\* \* \* \* \* \*

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

**2.** § 8(b)(6) of the NLRA, 29 U.S.C. § 158(b)(6), provides:

(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \* \*

(6) to cause or attempt to cause an employer to pay or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed....

**3.** 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**4.** 18 U.S.C. § 1961(4) defines the term "enterprise" as follows:

"[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individ-

associated with Local 41 and individually-named union officials Adams, Pillard, Pavlovic, Franey and Erker. These defendants are alleged to have participated in the affairs of the enterprise through a pattern of racketeering activity by means of their respective roles in the extortion and conspiracy scheme. The predicate acts alleged include issuance of "bogus" union cards, obtaining a "sham" Specialty Agreement, and extortion of money and votes, all in violation of 29 U.S.C. § 186(b), 18 U.S.C. § 1951, and New York State Penal Law §§ 155.05(e) [5] (extortion) and 180.25 (receipt of bribe by labor official). Count Four alleges that Heary Bros. has thereby been injured in its business and property, including damage to good will, lost profits, amounts paid to obtain bogus union cards, amounts paid as membership dues, employee benefit fund contributions, excess wages and attorneys' fees (Item 92, ¶¶ 65–77).

Count Five alleges that Local 41 and individual third-party defendants Adams, Pillard, Pavlovic, Franey and Erker conspired to commit the violations alleged in Count Four (*id.*, ¶¶ 78–82). Count Six alleges aider and abettor liability on behalf of those third-party defendants (*id.*, ¶¶ 83–86).

Count Seven mirrors the allegations of Count Four, with Local 41 as the "enterprise" (*id.*, ¶¶ 87–97). Count Eight alleges conspiracy (*id.*, ¶¶ 98–102), and Count Nine alleges aider and abettor liability (*id.*, ¶¶ 103–108), on behalf of third-party defendants Adams, Pillard, Pavlovic, Franey and Erker.

Count Ten alleges violations of 18 U.S.C. § 1962(b) [6] by means of the same conduct as alleged in Count Four (*id.*, ¶¶ 109–118). Count Eleven alleges conspiracy to violate § 1962(b) on behalf of Local 41, Adams, Pillard, Pavlovic, Franey and Erker (*id.*, ¶¶ 119–123), and Count Thirteen alleges aid-

er and abettor liability for § 1962(b) violations on behalf of IBEW, Local 41, Adams, Pillard, Pavlovic, Franey and Erker (*id.*, ¶¶ 124–129).

All of the third-party defendants named in the RICO counts have moved to dismiss under Rule 12(b)(6). The grounds for these motions will be discussed in turn.

### 1. Local 41.

Local 41 moves to dismiss the RICO claims against it on the ground that the third-party complaint fails to allege that Local 41 benefitted in any way from the pattern of racketeering activity carried out by individual officers so as to qualify Local 41 as a RICO "person." [7] Local 41 also contends that the complaint fails to allege predicate acts of extortion under the Hobbs Act or the New York Penal Law.

The amended third-party complaint alleges four RICO "enterprises": (1) IBEW, associated with RICO "persons" Local 41 and its officers Adams, Pillard, Pavlovic, Franey and Erker; (2) Local 41, associated with or employing RICO persons Adams, Pillard, Pavlovic, Franey and Erker; (3) IBEW and Local 41, as an "association-in-fact" enterprise; and (4) Heary Bros., associated with RICO persons Adams, Pillard, Pavlovic, Franey and Erker.

"[U]nder § 1962(c), a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). However, where the overlap between the RICO person and the alleged RICO enterprise is

---

uals associated in fact although not a legal entity. . . .

**5.** Presumably a reference to N.Y. Penal Law § 155.05(2)(e), which defines the crime of extortion.

**6.** 18 U.S.C. § 1962(b) provides:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**7.** "Person" is defined at 18 U.S.C. § 1961(3) as follows:

"[P]erson" includes any individual or entity capable of holding a legal or beneficial interest in property.

only partial, a § 1962(c) claim may be sustained. *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989). As stated in *Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), a defendant may be a "RICO person and one of a number of members of the RICO 'enterprise.' "

■ The amended third-party complaint passes this threshold. It alleges that Local 41 is both a RICO person and a RICO enterprise under § 1962(c). However, it also alleges that Local 41 and its individual officers are persons distinct from the enterprise—IBEW or Heary Bros.—and, in the alternative, that Local 41 is associated-in-fact with IBEW. The individual officers of Local 41 are the alleged RICO persons, none of whom are also the alleged enterprise. *See, e.g., Haggiag v. Brown,* 728 F.Supp. 286, 295–96 (S.D.N.Y.1990). The overlap between Local 41 and the alleged enterprise is therefore only a partial one, and the allegations are sufficient to sustain the § 1962(c) claim. *See Gregory v. American Guild of Musical Artists, supra,* 1993 WL 179110 at *7.

■ The primary thrust of Local 41's motion to dismiss the RICO claims against it is that, in order to hold a legitimate business corporation or association liable for the acts of its officers, the complaint must allege that the entity received a benefit from the racketeering activity. The general rule is that a plaintiff may not use § 1962(c) to impose vicarious liability on corporate or associative "enterprises" because to do so would violate that section's requirement that the "enterprise" and the "person" be distinct. However, as stated in *Davis v. Mutual Life Ins. Co. of New York,* 6 F.3d 367 (6th Cir.1993), *cert. denied,* 510 U.S. 1193, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994):

> No such prohibition ... prevents the imposition of liability vicariously on corporate "persons" on account of the acts of their agents, particularly where the corporation benefitted by those acts. Such a prohibition, if it existed, would prevent corporate persons from ever being found liable under RICO, since corporate principals may act only through their agents. Such a rule

would be manifestly contrary to the intent of Congress, and we decline to adopt it.

6 F.3d at 379 (discussing cases from the 1st, 3rd, 6th, 7th, 8th and 9th Circuits). Thus, a corporate employer may be held vicariously liable under § 1962(c) for the acts of its employees "when the employer is not the enterprise and the employer receives some benefit from its employee [sic] or agent's action." *Brady v. Dairy Fresh Products Co.,* 974 F.2d 1149, 1154 (9th Cir.1992).

■ In this case, Counts Seven, Eight and Nine allege that Local 41 is the "enterprise" or is associated-in-fact with IBEW, and that its officers (Adams, Pillard, Pavlovic, Franey and Erker) are the "persons" who have conducted Local 41's affairs through a pattern of racketeering activity in violation of § 1962(c). Accordingly, holding the corporate enterprise (Local 41) vicariously liable for its officers' racketeering activity would violate the distinctiveness requirement of § 1962(c). Counts Seven, Eight and Nine should therefore be dismissed to the extent that these claims allege Local 41 to be the RICO "enterprise."

■ Counts Four, Five and Six allege that Local 41 is a RICO "person" distinct from the IBEW "enterprise." Those counts also allege that Local 41 benefitted from the racketeering activity of its officers by "receiving pay-offs for the issuance of bogus union cards, ... and receiving illegal payments for membership fees and dues for illegitimate union members...." Item 92, ¶ 74(a). These allegations are sufficient to state a § 1962(c) claim against Local 41.

■ Local 41 also contends that the third-party complaint should be dismissed to the extent that it alleges violations of the Hobbs Act or N.Y. Penal Law § 155.05(2)(e) as RICO predicate acts since none of the third-party defendants are alleged to have used or threatened to use force, physical violence or fear to attain their goals.

18 U.S.C. § 1961(1) provides, in relevant part:

> "[R]acketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing

in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1951 (relating to interference with commerce, robbery, or extortion), ... 1954 (relating to unlawful welfare fund payments), ... (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations)....

The amended third-party complaint alleges various courses of conduct on the part of each third-party defendant in violation of one or more of these enumerated predicate acts, including 18 U.S.C. § 1951 (the Hobbs Act) and extortion under New York Penal Law § 155.05(2)(e).

■■■ The Hobbs Act, 18 U.S.C. § 1951, provides in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,-000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

\* \* \* \* \* \*

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, under color of official right.

8. § 155.05(2)(e) provides, in relevant part:

A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:

\* \* \* \* \* \*

(vi) Cause a strike, boycott or other collective labor group action injurious to some person's business; except that such a threat shall

Cases in the Second Circuit interpreting the Hobbs Act have stressed "that the element of 'fear' required by the Act can be satisfied by putting the victim in fear or economic loss." *United States v. Brecht,* 540 F.2d 45, 52 (2d Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977), *quoted in United States v. Capo,* 817 F.2d 947, 951 (2d Cir.1987).

The absence or presence of fear of economic loss must be considered from the perspective of the victim, not the extortionist; the proof need establish that the victim *reasonably* believed: first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment.... This circuit's case law on extortion by wrongful use of fear of economic loss is comprised of cases in which the evidence was plain that nonpayment would result in preclusion from or diminished opportunity for some existing or potential economic benefit.

*United States v. Capo, supra,* 817 F.2d at 951.

The amended third-party complaint adequately pleads these required elements. It alleges that the Hearys reasonably believed that the third-party defendants had the power to harm them by refusing access to union job sites, that the third-party defendants would in fact refuse the Hearys access unless certain payments were made, and that nonpayment by the Hearys would result in preclusion from the economic benefit of performing lightning protection services on existing or future union jobs (*see, e.g.,* Item 92, ¶¶ 21–23, 27–29, 36).

These same allegations are also sufficient to plead predicate acts of extortion under N.Y. Penal Law § 155.05(2)(e).[8] *See, e.g.,*

not be deemed extortion when the property is demanded or received for the benefit of the group in whose interest the actor purports to act; or

\* \* \* \* \* \*

(ix) Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

*People v. Kacer*, 113 Misc.2d 338, 448 N.Y.S.2d 1002, 1007–08 (Sup.Ct.N.Y.Co.1982) (Hobbs Act modelled on New York extortion statute; demand for kickbacks in exchange for award of future contracts qualifies as threat to harm business sufficient to charge extortion).

Accordingly, Local 41's motion to dismiss the RICO claims against it should be denied.

## 2. IBEW.

IBEW asserts that the amended third-party complaint fails to adequately allege a Hobbs Act violation against IBEW or any other third-party defendant since no fear of economic loss has been identified. However, as the discussion above demonstrates, the Hearys have adequately alleged fear of economic loss so as to survive a Rule 12(b)(6) motion to dismiss.

■ IBEW also contends that the amended third-party complaint fails to allege IBEW's commission of two or more predicate acts in order to impose liability under § 1962(c) or (d). The amended third-party complaint alleges at Count Nine that IBEW

aided and abetted each of its co-defendants' predicate acts ... which occurred during the years from 1979 to 1990 by virtue of providing the Sham Specialty Agreement executed by [IBEW]'s president without which participation and support by the [IBEW] the said predicate acts could not have been effectuated and by providing bogus membership in the [IBEW] to Heary Bros.' employees and otherwise.

\*　　\*　　\*　,　\*　·　\*　　\*

Further, by reason of [IBEW]'s position as a union representative to its members, [IBEW] is liable for aiding and abetting the predicate acts in Count Seven solely by reason of its knowledge (including without limitation the knowledge of its president Pillard, which is attributable to [IBEW]) of such predicate acts and its failure to take action.

(Item 92, ¶ 104).

■ Courts within the Second Circuit have held that a person who aids and abets the commission of two or more predicate acts may be held to have committed the acts for the purpose of satisfying the elements of a civil RICO claim, even though that person may not have personally committed the predicate acts. *See Morrow v. Black*, 742 F.Supp. 1199, 1203–04 (E.D.N.Y.1990); *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 412 (S.D.N.Y.1984); *see also Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990); *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1356 (3d Cir. 1987). The criminal standard for adjudging aiding and abetting liability is applicable in a civil RICO suit. *United States v. District Council*, 778 F.Supp. 738, 748 (S.D.N.Y. 1991). Thus:

To convict a defendant of aiding and abetting the government must prove (1) commission of the underlying crime, (2) by a person other than the defendant, (3) a voluntary act or omission by the person charged as an aider and abettor, with (4) the specific intent that his act or omission bring about the underlying crime.

*United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir.1985), *quoted in United States v. District Council, supra.*

■ The amended third-party complaint fails to allege any voluntary act or omission on the part of IBEW or its officers, Charles H. Pillard and Gene N. Adams, from which it could be inferred that the IBEW had any intent to participate in the alleged extortion scheme. That scheme is alleged to have been devised and carried out entirely at the local level. Count Nine alleges only that in 1979 Pillard executed the Specialty Agreement on behalf of IBEW and issued union membership cards, and that without these acts the scheme could not have taken place and the predicate acts could not have been committed. Although an aider and abettor need not know all of the details of a crime in order to be subject to liability for its commission, the complaint must allege that the aider and abettor knew "the nature of the substantive offense he furthers or promotes." *United States v. Sigalow*, 812 F.2d 783, 786 (2d Cir.1987). "[I]t is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something

that he wishes to bring about, that he seek by action to make it succeed." *Nye & Nissen Corp. v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949), *quoted in United States v. District Council, supra,* 778 F.Supp. at 748.

All that is alleged here is that the IBEW should be held liable as an aider and abettor of the alleged extortion scheme by virtue of Pillard's and Adams' knowledge of Local 41's conduct (presumably through his alleged participation in the scheme during the time he was president of Local 41), and IBEW's failure to take any action to prevent it. However, as IBEW points out, an international union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge that the local is engaging in unlawful acts. *Phelan v. Local 305,* 973 F.2d 1050, 1061–61 (2d Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993) (citing *Carbon Fuel Co. v. United Mine Workers of America,* 444 U.S. 212, 217–18, 100 S.Ct. 410, 414–15, 62 L.Ed.2d 394 (1979)). Thus, under common law agency principles, the IBEW can only be held liable for participating or acquiescing in the alleged extortion scheme if, having knowledge of the material facts involved, it evidenced an intention to ratify the scheme. *See Rodonich v. House Wreckers Union Local 95,* 817 F.2d 967, 972–73 (2d Cir.1987).

The amended third-party complaint contains no such allegations. The Hearys apparently rely solely on Pillard's status as former president of both Local 41 and, subsequently, IBEW. However, based on the discussion in section IV(B)(1) above, the amended third-party complaint contains no allegations that IBEW benefitted from Pillard's allegedly illegal activity while Pillard was president of Local 41. In sum, the Hearys have not convinced the court that the vicarious liability or aider and abettor liability doctrines should be extended to IBEW.

Accordingly, the Hearys have failed, after no less than three attempts, to state a claim upon which relief under 18 U.S.C. § 1962(b) or (c) can be granted against IBEW. The third-party complaint should therefore be dismissed as against IBEW.

### 3. Pillard and Adams.

Third-party defendants Charles H. Pillard and Gene N. Adams have moved to dismiss on the ground that the amended third-party complaint fails to allege either of those defendants' personal involvement in a pattern of racketeering activities. However, the amended third-party complaint alleges that both Pillard and Adams engaged in a pattern of racketeering activity and conspired to commit racketeering offenses:

... by repeated and continuing acts of demanding and receiving pay-offs for the issuance of bogus union cards, demanding illegal contributions to the plaintiff pension funds and demanding and receiving illegal payments for membership fees and dues for illegitimate union members and by demanding the delivery of fraudulent votes in union elections for designated candidates.....

(Item 92, ¶¶ 74(b),(c); 94(a),(b); 115(b),(c)). This is sufficient to allege the commission of two or more predicate acts under § 1962(b), (c) and (d).

Pillard and Adams also contend that the RICO claims against them are barred by the applicable four-year statute of limitations. However, the Second Circuit has adopted the "separate accrual" rule, which provides that each time a plaintiff discovers or should have discovered an injury caused by a defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1105 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989). The Hearys have alleged discovery of economic injury, in the form of alleged pay-offs made to Local 41 officials, within the four-year civil RICO limitations period. Thus, the alleged scheme has continued into the limitations period, and the RICO claims against the third-party defendants have been timely commenced. Any dispute as to the time of the third-party defendants' actual commission of predicate acts or participation in the scheme must await discovery or trial.

Accordingly, it is recommended that third-party defendants' Pillard and Adams' motion to dismiss be denied.

#### 4. John Pavlovic and Michael Franey.

■ The amended third-party complaint contains the same allegations with regard to participation in the racketeering activity and commission of predicate acts by John Pavlovic and Michael Franey, as officers of Local 41 (Item 92, ¶¶ 74(d), (f); 94(c), (e); 115(d), (f)). In addition, the amended third-party complaint alleges that Michael Franey, as president of Local 41

> has violated 18 U.S.C. § 1954 by repeated and continuing acts of receipt or agreement to receive or solicitation of things of value (including but not limited to fraudulent votes in union elections, illegal contributions to the pension funds and other unlawful payments) because of or with intent to be influenced with respect to his actions, decisions or other duties relating to plaintiff pension benefit plans for which he acted as Trustee.

(*Id.*, ¶¶ 74(f), 94(e), 115(f)). As discussed above, these allegations suffice to allege the commission of two or more predicate acts so as to state claims for relief under § 1962(b), (c) and (d).

■ Pavlovic and Franey also challenge the allegations against them as inadequate for pleading fraud with particularity under the requirements of Fed.R.Civ.P. 9(b). However, this challenge is misplaced since the predicate acts alleged, while, sounding in fraud, are based on federal and state statutes with specific proscriptions against extortionate or other illegal conduct, not on the mail or wire fraud statutes which normally invoke the pleading requirements of Rule 9(b) in the context of RICO. *See, e.g., Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244, 248 (S.D.N.Y.1986).

Accordingly, the motion to dismiss by third-party defendants Pavlovic and Franey should be denied.

#### 5. Daniel E. Erker.

The amended third-party complaint alleges essentially the same conduct on the part of Daniel E. Erker, Local 41's current business manager, as it does against the other individual third-party defendants (Item 92, ¶ 74(e)). As such, Erker's Rule 12(b) motion to dismiss is subject to the same analysis as the motions of the other individual third-party defendants, and should be denied.

#### 6. NECA.

■ The amended third-party complaint alleges that NECA breached its contractual and fiduciary duties to the Hearys by failing to negotiate a collective bargaining agreement on their behalf (Count Fourteen).[9] As discussed above in part IV(A), this claim should be dismissed as pre-empted by federal labor contract law.

#### C. Contribution.

Count One of the amended third-party complaint seeks contribution and indemnification against third-party defendants Local 41, the International, NECA, Adams, Pavlovic, Pillard, Franey and Erker for any judgment entered against the Hearys for claims asserted in the amended complaint (Item 92, ¶¶ 49–52). The claims asserted in the amended complaint are based on ERISA. Third party defendants move to dismiss Count One for failure to state a claim.

■ To the extent that Count One asserts a state law claim for contribution or indemnification, it is preempted by ERISA. *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1027 (2d Cir.1992); *see also Ingersoll–Rand v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990); 29 U.S.C. § 1144(a). ERISA itself does not expressly

---

**9.** The original third-party complaint alleged claims for contribution, breach of contract and fiduciary duty, negligence, and intentional tort, as well as involvement in the RICO "scheme," against NECA and David A. Roll, NECA's execu-

tive director. The amended third-party complaint has eliminated any claim against Mr. Roll, and has narrowed the claims against NECA to contribution (Count One) and breach of contractual and fiduciary duty (Count Fourteen).

provide for contribution or indemnification. However, the Second Circuit has held that a fiduciary's right to seek contribution and indemnity from other fiduciaries is a fundamental principle of equity jurisprudence governing the law of trusts, and that rights of contribution and indemnity should be incorporated into the federal common law of ERISA. *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 15 (2d Cir.1991), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992).

In *Chemung,* the Court stated:

We ... conclude that the traditional trust law right to contribution must also be recognized as a part of ERISA. By so concluding, we are not creating a right from whole cloth. We are simply following the legislative directive to fashion, where congress has not spoken, a federal common law for ERISA by incorporating what has long been embedded in traditional trust law and equity jurisprudence. Such a rule would have no financial impact on the recovery of plaintiffs. They would continue to recover their full loss from any or all breaching fiduciaries, each of whom would be jointly and severally liable to the plaintiffs....

... [W]e think that even a breaching fiduciary should be entitled to the protection of contribution that has been traditionally granted fiduciary defendants under the equitable provisions of trust law. There is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt. Full responsibility should not depend on the fortuity of which fiduciary a plaintiff elects to sue.

*Id.* at 16.

Here, in contrast to *Chemung,* the employer is seeking contribution and indemnity from non-fiduciaries. Local 41 cites the recent Supreme Court decision in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), as authority for the proposition that there is no right of contribution in ERISA against a non-fiduciary. *Mertens* held that the civil enforcement pro-

visions of ERISA, 29 U.S.C. § 1132, do not authorize suits for money damages by plan participants against non-fiduciaries who knowingly participated in a fiduciary's breach of duty. Local 41 argues that, under the *Mertens* rationale, it should not be subject to the employer's contribution or indemnification claim since it is not a plan fiduciary. NECA, the International and the individual third-party defendants adopt Local 41's argument.[10]

*Mertens* involved a claim by beneficiaries against non-fiduciaries. This case involves a claim by an employer against non-fiduciaries. Despite this difference, I find the analysis in *Mertens* to be controlling. Furthermore, other courts that have squarely addressed this issue have concluded that ERISA's overall scheme does not support an employer's claim for contribution or indemnification from a non-fiduciary.

For example, in *Massachusetts Laborers' Health & Welfare Fund v. Varrasso,* 111 F.R.D. 62 (D.Mass.1986), the employer brought a third-party claim against the union alleging that the ERISA delinquency claimed in the underlying action was caused by the union's participation in an unlawful strike. The court granted the union's motion to strike the employer's third-party claim, finding that the employer had an independent obligation to contribute to the pension fund, which was not conditioned on the union's performance of its promise not to strike. The court also found that such a claim would be contrary to the congressional intent of ERISA since it " 'might well have complicated and lengthened the trial, and would have introduced the extraneous question of remedies in the third party action....' " *Id.* at 64 (quoting *Southwest Administrators, Inc. v. Rozay's Transfer, supra,* 791 F.2d at 777).

In *McLendon v. Continental Group, Inc.,* 1986 WL 11789 (D.N.J.1986), former employees sued their employer for violations of ERISA and RICO. The employees alleged that they were laid off in order to preclude them from attaining certain benefits. The

---

**10.** The third-party complaint does not allege that any of the third-party defendants are fiduciaries

as that term is defined by ERISA.

employer subsequently filed a third-party action against the union for breach of the collective bargaining agreement. The third-party complaint also contained a claim against the union for contribution under ERISA.

Employing the analysis used in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the court found that ERISA was enacted to regulate fiduciaries, not to benefit employers. The court also found that ERISA's legislative history and comprehensive structure arguably supported recovery by a beneficiary from a non-fiduciary, but did not support recovery by an employer from a non-fiduciary union. 1986 WL 11789 at *2.

In *McLaughlin v. Biasucci*, 688 F.Supp. 965 (S.D.N.Y.1988), the trustee of an employee benefit plan, sued by the Secretary of Labor for breach of fiduciary duties under ERISA, sought leave to implead the attorney and the law firm that advised him on his investment of fund assets. The court refused to find an implied right of contribution under ERISA, relying on the holding in *McLendon v. Continental Group, supra.*

More recently, in *Glaziers & Glassworkers Local 252 Annuity Fund v. Newbridge Securities, Inc.*, 823 F.Supp. 1191 (E.D.Pa.1993), the district court refused to recognize a right of contribution on behalf of the trustees of union employee benefit plans against their former accountants and clearing brokers. The court agreed with the Second Circuit's holding in *Chemung* that its analysis should focus on the creation of federal common law to augment ERISA, rather than implication of a remedy under the *Cort v. Ash* test. However, *Chemung* was distinguished on the basis that it dealt with apportionment of liability as among fiduciaries, not as between a fiduciary and a non-fiduciary. The court found that the language and purpose of ERISA "negate the inference that Congress intended courts to create federal common law that would permit a fiduciary to seek contribution or indemnification from a non-fiduciary." *Id.* at 1194–96.

The Hearys cite *Rozay's Transfer v. Local Freight Drivers*, 850 F.2d 1321 (9th Cir. 1988), in support of their position. There, the court upheld the district court's decision that the union must indemnify the employer for pension contributions where the union had promised not to collect the pension payments called for in the collective bargaining agreement.

This case is factually and legally distinguishable from *Rozay's Transfer*. Jurisdiction in that case was predicated on LMRA Section 301. There was no discussion of ERISA, and the case was decided prior to *Mertens*. Furthermore, the fraudulent representation at issue—*i.e.*, the promise not to collect pension payments due under the collective bargaining agreement—went directly to the employer's obligation to make pension payments.

Based on this weight of authority, I find that the Hearys have failed to convince the court that the federal common law augmenting ERISA provides for a right of contribution on behalf of the delinquent employer against a non-fiduciary union. Furthermore, the Hearys have failed to allege facts which would entitle them to contribution or indemnification against the third-party defendants for losses sustained by the Hearys as a result of their ERISA liability. Count One should therefore be dismissed on the pleadings.

## V. Rule 11.

Finally, NECA has moved for sanctions against the Hearys under Fed.R.Civ.P. 11. This motion is denied. NECA has failed to demonstrate that Rule 11 has been violated.

### CONCLUSION

Based on the foregoing, it is ORDERED that the Hearys' motion for leave to amend the third-party complaint is granted, and NECA's motion for Rule 11 sanctions is denied. The court also recommends the following:

NEBF's motion for partial summary judgment should be granted, and judgment entered in favor of NEBF and the other plaintiffs on their ERISA delinquency liability claim.

NEBF's motion strike or sever the third-party action should be granted.

Third-party defendants IBEW's and NECA's motions to dismiss should be granted in their entirety, and those parties should be dismissed from the case.

The remaining third-party defendants' motions to dismiss should be granted to the extent that they request dismissal of Counts One, Two, Three, Thirteen, Fourteen and Fifteen of the amended third-party complaint, and those motions should be denied in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

 The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may* *result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

DATED: Buffalo, New York
March 29, 1994